**MOULTRIE NATIONAL BANK,**
Plaintiff,

v.

**TRAVELERS INDEMNITY COMPANY,**
Defendant.

Civ. A. No. 540.

United States District Court
M. D. Georgia,
Thomasville Division.

June 11, 1959.

Moore, Gibson, DeLoache & Gardner, Moultrie, Ga., for plaintiff.

Whelchel & Whelchel, Moultrie, Ga., Harry S. McCowen, Atlanta, Ga., for defendant.

BOOTLE, District Judge.

By stipulation of the parties this case is being tried by the court without a jury and is being tried on the basis of the pleadings, exhibits thereto, certain affidavits heretofore filed in connection with motions for summary judgment which were overruled, including a statement of facts verified by L. D. Dubberly and L. L. Moore, two affidavits of E. E. Joachim, and upon the deposition of Judge J. E. Craigmiles, if admissible, taken in a former case tendered herein by the defendant and objected to by plaintiff.

The suit is based upon a banker's blanket bond issued by defendant to plaintiff agreeing to indemnify plaintiff against "any loss through any dishonest, fraudulent or criminal act of any of the employees * * *", employees being defined "to mean * * * the Insured's officers, clerks and other employees while employed in, at or by any of the Insured's offices while covered under this bond, and attorneys retained by the Insured to perform legal services for the Insured and the employees of such attorneys while such attorneys or the employees of such attorneys are performing

such services for the Insured, and Guest Students pursuing their studies or duties in any of said offices."

I find the facts to be as stated in the five page "Statement of Facts" above referred to and verified as above indicated. For the sake of brevity, the said statement of facts is not repeated herein, but is included herein by this reference. From the facts so stated and found it appears that the gravamen of plaintiff's complaint is that, in making a real estate loan to J. L. Gardner, it relied upon a title opinion furnished by Judge J. E. Craigmiles, Judge of the City Court of Thomasville and a practicing attorney in that city, to the effect that Gardner was possessed of a good, fee-simple title to sixty acres of real estate, which, in fact, he did not own.

■ Prior to the institution of the present suit the plaintiff bank sued Judge Craigmiles in the Superior Court of Thomas County seeking to recover from him the same loss which it asserts in this suit against the bonding company. For use in the trial of that case the testimony of Judge Craigmiles was taken at the instance of the plaintiff bank by way of cross-examination. These are the depositions tendered in this case by the defendant and objected to by the plaintiff. Upon the basis of the following authorities, I conclude that these depositions are admissible. Fed.R.Civ. P. 43(a), 28 U.S.C.A.; Ga.Code Ann. § 38–314; Fed.R.Civ.P. 26(d)(3), 28 U.S.C.A.; Batelli v. Kagan & Gaines Co., 9 Cir., 1956, 236 F.2d 167; The Georgia Law of Evidence by Thomas F. Green, secs. 230 and 231, pages 512 and 513; Gavan v. Ellsworth, 1872, 45 Ga. 283, 288; The Atlantic & West Point Railroad v. Venable, 1881, 67 Ga. 697, 699; Radford v. Georgia & Alabama Ry., 1901, 113 Ga. 627, 39 S.E. 108; Goodwin v. Allen, 1950, 83 Ga.App. 615, 64 S.E.2d 212.

■ The plaintiff, in addition to its objections to said depositions in their entirety, has filed written objections to specific portions thereof, said portions so specifically objected to being set out in said written objections, reference to which is hereby made. As to all of said portions the objections are that the statement objected to is of no probative value, is irrelevant and attempts to vary the terms and meaning of the certificate signed by Judge Craigmiles, and is an attempt to prove the authority of an alleged agent by the agent's own statements. Additionally, some of said portions are objected to on the ground that they are not responsive to the questions asked. These objections are overruled. All of said portions are admissible, if for no other purpose, as bearing upon the question whether there was any "dishonest, fraudulent or criminal act" on the part of Judge Craigmiles. As to the objection based upon alleged non-responsiveness, I think the correct rule is that stated in Wigmore on Evidence, 3d. Ed. Vol. 3, sec. 785, as follows:

> "Where the witness, either in a deposition or on the stand, goes beyond the scope of the question, and makes an answer *not responsive,* there is here nothing 'per se' wrong. If the answer includes irrelevant facts, they may be struck out, and the jury directed to ignore them (ante, sec. 18); if it furnishes relevant facts, then they are none the less admissible merely because they were not specifically asked for:"

Plaintiff's objections to paragraph 3 of each affidavit of E. E. Joachim are hereby sustained, the defendant agreeing that said objections are meritorious. Also, plaintiff's objections to paragraph 4 of each of said affidavits are hereby sustained.

In order for plaintiff to recover it must carry the burden of proof on three questions: (1) Was Judge Craigmiles an attorney "retained by the Insured to perform legal services for the Insured?" (2) Did Judge Craigmiles commit any "dishonest, fraudulent or criminal act" in the premises? (3) Has the bank sustained any loss through any such dishonest, fraudulent or criminal act of such attorney so retained, and, if so, has

it sufficiently established the amount of such loss?

■ In view of the fact that the answer to the second question must be in the negative and that the plaintiff has not proven that Judge Craigmiles committed any dishonest, fraudulent or criminal act in the premises and that such answer is dispositive of this case, I shall discuss that question first. In addition to finding the facts to be as stated in the verified "Statement of Facts" as above indicated, I also find from Judge Craigmiles' depositions the following facts: On December 11, 1954, Gardner, the bank's customer now absconded, approached Judge Craigmiles in Thomasville and told him, in effect, that he had told the bank that he had not placed any lien against the property except the security deed he was offering the bank and that the bank wanted Judge Craigmiles to make a statement to that effect. Taking Gardner at his word, Judge Craigmiles made a search of the records, limiting his search from the date of the recorded security deed (except that he did "look back a little further") down to date of examination and wrote the following short certificate:

"December 11, 1954
"Moultrie National Bank
"This is to certify that I have checked the titles from 1920 to date. I find no morgage (sic) leane (sic) or taxes against said titles of J. L. Gardner except the one you have now.
"/s/ J. E. Craigmiles"

Said certificate was given by Judge Craigmiles to Gardner, and on January 10, 1955 Gardner came back to Judge Craigmiles and said, in effect, that the bank was not satisfied with said short certificate, said dissatisfaction arising solely from the fact that the bank wanted the certificate to contain a description of the property "just like it is recorded in the [security] deed * * * and give the book and page." Gardner assured Judge Craigmiles that "that's all they want." Judge Craigmiles said to Gard-

ner: "Look here, this certificate goes further than that. It says about having fee simple title. I haven't looked into that." Gardner then said: "The bank don't want you to do a thing but just to state it, that's all they want, just to show that that is the same property they hold in that security deed and that fits that description." Judge Craigmiles replied: "Well, I don't like that much, I don't like to do a thing like that", but Gardner assured him "that's all they want." Judge Craigmiles had sat in the Lodge with Gardner and trusted him and relied upon Gardner's assurance as above outlined, and the additional assurance that the bank was "not concerned at all about the property, the possession, or the bank's title at all, and he further went and said that they had examined the title and were perfectly satisfied about it, with the title, he said that's all they want is to bring it down from that security deed." Thus relying upon the assurances of his Lodge brother and a man whom he had formerly represented in some legal matters, Judge Craigmiles accommodated Gardner by signing, under date of January 10, 1955, the full-dress formal title opinion and certificate which had been prepared by the bank's regularly retained counsel and sent by the bank through Gardner to Judge Craigmiles.

Unquestionably, Gardner was the agent of the plaintiff bank in taking the last-mentioned title certificate to Judge Craigmiles and requesting its execution. It is alleged in paragraph 7 of plaintiff's complaint: " * * * at the instance of petitioner and under its instructions, the said Gardner, acting for petitioner, procured and caused one J. E. Craigmiles * * * to make and execute a certificate of title to said land * * * ". As I understand the bank's contentions while admitting and insisting that Gardner represented the bank for the purpose of taking to Judge Craigmiles for execution the title certificate and had sufficient authority from the bank to conduct such negotiations with Judge Craigmiles as to constitute Judge

Craigmiles an "attorney(s) retained by the (bank)", yet Gardner had no authority to make any representations to Judge Craigmiles as to whether or not the bank desired him to make a full title examination or only a limited search of the records. 4 Ga.Code Ann. sec. 302 reads as follows:

"The principal shall be bound by all the acts of his agent within the scope of his authority; if the agent shall exceed his authority, the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none."

But whether or not Gardner had authority from the bank to instruct Judge Craigmiles to make only a limited title examination notwithstanding the broad language of the title certificate, the fact that the bank's representative did so instruct Judge Craigmiles is amply sufficient to negate the existence of any dishonest, fraudulent or criminal act on the part of Judge Craigmiles. It will not do to say that Judge Craigmiles, as an experienced attorney, should have doubted the good faith of Gardner in making such representations as to the bank's desires. It may well be that Judge Craigmiles was too trusting a soul and was negligent in the premises, but I find as a fact that the plaintiff bank has not carried the burden of proving dishonesty, fraud or crime on the part of Judge Craigmiles. It is not necessary to decide whether Judge Craigmiles' signing of a certificate which later turned out to be incorrect would in and of itself require or justify a finding of a dishonest, fraudulent or criminal act on his part, the surrounding circumstances being undisclosed, because here the deposition of Judge Craigmiles discloses such circumstances.

In view of the foregoing it is not necessary to decide whether, under the peculiar facts of this case, Judge Craigmiles was within the meaning of the bond an "attorney(s) retained by the Insured * * * ". While lenders sometimes agree to accept a title opinion to be furnished by the borrower's attorney and under such an arrangement there may exist a relationship of attorney and client between the lender and the borrower's attorney "if such was the mutual understanding", Lawall v. Groman, 180 Pa. 532, 37 A. 98, 57 Am.St.Rep. 662, this simply means that the lender may employ or retain the borrower's attorney to be also the lender's attorney, if such is the mutual understanding, and, if such is the mutual understanding, the mere fact that the three-party agreement is that the borrower will pay all expenses of the loan including the attorney's fees does not preclude the claimed relationship of attorney and client between the lender and the attorney. It may be argued, however, that under such an arrangement the claimed relationship may exist without the lender having "retained" such attorney. While there may be a special as well as a general retainer, Black's Law Dictionary, 4th ed., page 1479, the word "retain" has a connotation of permanence. One of the current Webster definitions is "to keep in pay or in one's service. Specif.: (a) to employ (a lawyer) by paying a retainer." It may be argued that this bond was intended to cover, as it says, "attorneys retained by the Insured" and not a borrower's attorney never seen, never contacted, never retained by the bank, but whose opinion, for the convenience of the borrower, the bank agrees to rely upon, provided the borrower agrees to pay him. It may be, too, that by the language used in this bond the parties contemplated a less tenuous relationship than that shown to exist between the plaintiff bank and Judge Craigmiles.

Nor is it necessary to decide whether the bank has suffered any loss due to its reliance upon the title opinion. It is doubtful, however, whether the bank has carried the burden of proving any such loss or the amount thereof with sufficient definiteness to support any finding in its favor. An analysis of the financial dealings as shown in the above-mentioned statement of facts shows that on November 1, 1954 Gardner owed the bank $2,979 including $115.10 interest secur-

**448**

ed by property and crops of unestablished value. This indebtedness would not have been renewed or extended but for this real estate loan. Under the evidence the bank may already have lost said sum or some portions thereof. Thereafter loans and collections were made as follows:

| Loans | | Payments | |
|---|---|---|---|
| $ 600.00 | 1–7–55 | $ 77.00 | 7–30–55 |
| 728.00 | 2–28–55 | 510.00 | 8–16–55 |
| 147.20 | 4–21–55 | 218.00 | 9–21–55 |
| 77.00 | 6–30–55 | 287.37 | 9–21–55 |
| | | 147.20 | 10–28–55 |
| $1552.20 | | $1239.57 | |

When the advance of $728 was made on February 28, 1955 additional chattel and crop collateral was acquired, but here again of unestablished value. The original indebtedness of $2,979 was not incurred on the strength of the title opinion but was only renewed or extended on the strength thereof. Only $1,552.20 of new money was paid out on the strength of the title opinion, and almost that amount, $1,239.57, was repaid. Although in reliance upon the security deed the bank refrained from making any specific application of these re-payments and from attempting to realize upon its other collateral, still the defendant would be liable only for loss resulting proximately from the act of Judge Craigmiles complained of, and unless the plaintiff's theory is correct that the measure of damages is the value of the land limited by the amount of the debt, the plaintiff has not carrried its burden of proving its damages. This indemnity bond covers only losses "through" or caused by the acts complained of. 7 C.J.S. Attorney and Client § 143, p. 980. It is indicated also in the case of Lilly v. Boyd, 1883, 72 Ga. 83, that where an attorney gives erroneous advice special damages must be established or only nominal damages awarded.

Accordingly, I find in favor of the defendant with costs to be taxed against the plaintiff. This memorandum is intended to suffice as compliance with Rule 52(a), Fed.R.Civ.P.

Counsel for the defendant may prepare and submit a judgment in accordance herewith, after submitting the same to counsel for the plaintiff for suggestions as to form.