## Marian Lawall, Appellant, *v.* Clinton A. Groman.

*Attorney and client—Evidence to establish relationship—Same attorney representing adverse interests.*

The payment of a fee is the most usual and weighty item of evidence to establish the relationship of client and attorney, but it is by no means indispensable. The essential feature of the professional relation is the fact of the employment to do something in the client's behalf. There must be an agreement, express or implied, for compensation, but whether payment is made in part or in whole by retainer in advance is not material. Nor is it even indispensable that the compensation should be assumed by the client. Ordinarily it is so from the nature of the employment which in the vast majority of cases involves the guarding or enforcement of the

client's interest against an adverse one, and is, therefore, exclusive. But even adverse interests if to be amicably adjusted may be represented by the same counsel, though the cases in which this can be done are exceptional, and never entirely free from danger of conflicting duties. Per MITCHELL, J.

The mere fact that an attorney acts for a borrower and receives his compensation from him does not of itself prevent the relation of attorney and client between the attorney and the lender, if such is the mutual understanding.

It is proper to submit to the jury the question of the relationship of attorney and client between a mortgagee and the mortgagor's attorney, where there is evidence that the attorney kept the mortgage and placed it on record, and that he agreed " to search the title and the records in reference to liens."

*Attorney and client—Attorney representing both mortgagor and mortgagee—Duties and liabilities of.*

Where an attorney at law representing the mortgagor undertakes at the request of the mortgagee to see that the mortgage is a first lien, although the mortgagor is to pay the fees, he is bound to perform the duty with ordinary and reasonable skill and care in his profession, and on failure so to do he will be liable for negligence in that respect.

*Attorney and client—Breach of duty—Damages.*

Where an attorney for a mortgagee is negligent in his duty of examining the title to the land mortgaged, the mortgagee is entitled to bring suit at once without waiting for the mortgage to be sued out, and may recover the difference in value between the security he contracted for, and that which he actually received. The cause of action in such a case is the breach of duty, not the damages, which are only an incident.

*Attorney and client—Mortgage—Negligence—Damages.*

In an action against an attorney at law to recover damages for neglect of duty in examining title to land upon which plaintiff took a mortgage for one thousand dollars, the evidence showed that the defendant stated that the mortgage was a first lien, when in fact there were two prior liens aggregating one thousand dollars. The statement of claim averred that the property was " not worth more than twelve hundred dollars." A witness thought it would be " cheap at ten or twelve hundred dollars," and the owner of the prior liens testified that the property " had rather increased during the last two years." *Held,* that the evidence as to damages although meager was sufficient to go to the jury.

*Evidence—Attorney and client—Declarations—Mortgage.*

In an action against an attorney at law by a mortgagee to recover damages for loss occasioned by negligence in examining title, declarations of the mortgagor, in the absence of evidence of fraud or collusion between him and the attorney, are inadmissible.

*Principal and agent—Evidence—Declarations—Proof of agents.*

Although agency cannot be proved by declarations of the alleged agent

yet he is a competent witness to prove it, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject.

Argued Feb. 1, 1897. Appeal, No. 441, Jan. T., 1896, by plaintiff, from order of C. P. Lehigh Co., Nov. T., 1895, No. 72, refusing to take off nonsuit. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for alleged loss occasioned by the negligence of an attorney at law. Before ALBRIGHT, P. J.

Plaintiff's statement of claim was as follows:

The above action is founded as follows: The defendant is and was in 1894, a practicing attorney at the Lehigh county bar, maintaining an office and place of business in Allentown, Pa. The plaintiff, a single woman, resides at Catasauqua, in the said county, and attained her majority about December, 1893, and came into possession of her share of her father's estate which she desired to invest on first mortgage. O. T. Roberts is the owner of a house and lot of ground in Salisbury township, in said county, and desired to borrow $1,000 upon the same which is described, viz: All that lot or piece of ground situate in Salisbury township, Lehigh county, Pa.; bounded on the north by Long Alley, on the east by property of Daughters of Temperance, on the west by property of Joseph Downing, and on the south by Hellertown avenue, containing in front on said avenue thirty feet, and in depth of equal width one hundred and four feet, on first mortgage. The plaintiff was willing to invest the sum of $1,000 upon said property on first mortgage, and employed the defendant to examine the title, draw the papers, and place it as a first mortgage; the defendant then examined the title, and falsely or negligently told the said plaintiff that the said lien of her mortgage was first upon the said property, and that she could safely pay the said money over; the plaintiff then paid the money to the said Roberts in the presence and under the direction of said defendant, who received his compensation from the said Roberts. The plaintiff resting upon the representations of her counsel, the said defendant, did not discover the misrepresentation, negligence and carelessness of defendant until August, 1895. Plaintiff then learned and ascertained that she held the third lien upon the said prop-

erty, instead of the first, as her counsel had represented to her; the following being the order of liens on record:

Joseph Downing, July 20th, 1892, mortgage, . $ 700.00
Orlando Fegley, July 9th, 1893, . . . 300.00
Marion L. Lawall, March 28th, 1894, mortgage, . . . . . . . . 1,000.00

She is informed and advised that the third lien is of no value, the property not being worth more than $1,200.

The plaintiff, through the negligence, carelessness and misrepresentation of her counsel, has sustained damage to the extent of $1,500, to recover which this suit is instituted.

At the trial it appeared that the defendant is a practicing attorney at law of the city of Allentown, Pa., and had been the attorney for Edgar Lawall, the plaintiff's brother, in loaning money for him. Learning that plaintiff had some money to loan he wrote her brother Edgar that he knew where a good investment for $1,000 could be made on first mortgage, at six per cent. Edgar, acting for the plaintiff, called upon the defendant at his law office in Allentown, and went with him to see the property upon which the proposed mortgage was to be placed. The defendant and Lawall arranged for a meeting in defendant's office on a certain day to make the loan, the defendant in the meantime agreeing to examine the title to the property and search the records as to liens; also write the bond and mortgage. On March 28, 1894, the plaintiff and her brother Edgar met the defendant at his office. Defendant then said that everything was not quite completed; that there were several small liens on the property which he thought had been paid, but it was necessary to have them satisfied of record. They were finally satisfied, defendant saying, "I want to see that everything is right." Just before the money was handed over to him he said, "Now, just one minute more—I want to go over to the court house and look over the records again." He went out and shortly returned saying that everything was all right. The plaintiff then asked if this was a first mortgage at six per cent, and the defendant replied that it was.

Plaintiff testified, "Q. You paid Mr. Groman no fees in this matter, at all? A. No, sir. Q. Did you have any conversation with Mr. Groman that he should be your attorney? A. No, sir.

Q. Nothing of that kind was said on that day? A. I did not say it; no, sir."

The testimony of the plaintiff further showed that she had spoken to the defendant for the first time on that day, and that they had not previously had any business transactions.

When David Harbison was on the stand this offer was made:

"Plaintiff proposes to prove by the witness that subsequent to the occasion just testified to, witness saw Mr. O. T. Roberts and his wife, O. T. Roberts being the party who borrowed this money from the plaintiff through Mr. Groman; that he had a conversation with Mr. Roberts, who told the witness that at the time when this money was loaned he wanted only $300, but that Mr. Groman persuaded him to take $1,000, now that he could get it, and that he paid Mr. Groman a large fee, but the amount he could not tell until he had examined his books."

Objected to as incompetent and irrelevant.

By the Court: The objection is sustained. Plaintiff excepts, and bill sealed. [3]

Edgar J. Lawall, a witness for plaintiff, in his examination in chief was asked the question:

"Were you authorized by your sister to pay it (the money) over without your sister's consent?"

Objected to.

By the Court: The objection will have to be sustained, his authority will have to be found from what was said; his opinion cannot be given by plaintiff while he is being examined in chief. Plaintiff excepts and bill sealed. [4]

The court entered a compulsory nonsuit which it subsequently refused to take off. [1, 2]

*Errors assigned* were (1, 2) refusal to take off nonsuit; (3, 4) rulings on evidence, quoting the bill of exceptions.

*James S. Biery*, with him *William H. Glace*, for appellant.— The relationship of attorney and client was established: Bacon's Abr. Attorney; Story on Agency, sec. 25; Co. Litt. 51*b.*, 128*a*; 1 Am. & Eng. Ency. of Law, 942; Com. Dig. Attorney; Weeks on Attorney, sec. 28; Bourne v. Diggles, 2 Chitty, 311; Coggs v. Bernard, 2 Ld. Raym. 919; Elsee v. Gatward, 5 T. R. 143; Dartnall v. Howard, 4 Barn. & Cress. 345; Green v.

Dixon, 1 Jur. 137; Howell v. Young, 5 Barn. & Cress. 259; Hayne v. Rhodes, 8 A. B. 342; Ziegler v. Com., 12 Pa. 227.

If the defendant was the plaintiff's attorney in the matter, then he is answerable to the plaintiff for any dereliction in his position: Case of Austin et al., 5 Rawle, 202; Sharswood's Leg. Eth. 58; Lynch v. Com., 16 S. & R. 370; Hughes v. Mayre, 3 T. R. 275; In re Aitkin, 4 B. & A. 47; Luxmore v. Lethbridge, 5 B. & A. 898; Foster v. Jack, 4 Watts, 334; Gray v. Brackenridge, 2 P. & W. 75; Thompson v. Boyle, 85 Pa. 477; Waln v. Beaver, 161 Pa. 612.

The least concert or collusion between parties to an illegal transaction makes the act of one that of all: Confer v. McNeal, 74 Pa. 112; Bredin v. Bredin, 3 Pa. 81; Rogers v. Hall, 4 Watts, 359; Gibbs v. Neely, 7 Watts, 305; Mackinley v. McGregor, 3 Wharton, 396; Burns & Stevenson v. McCabe, 72 Pa. 309; Kimmel v. Geeting, 2 Grant, 125.

*Milton C. Henninger,* with him *Marcus C. L. Kline,* for appellee.—The relation of attorney and client does not exist, unless there is the payment of a retainer, or a contract either express or implied for the payment of compensation by the client to the attorney: 2 Bouv. Law Dict. 586; Foulks v. Falls, 91 Ind. 315; Weeks on Attorneys, 327; Wilkinson v. Grant, 18 Com. Bench, 319; Robertson v. Fleming, 4 Macq. H. of L. Cases, 167; Kahl v. Love, 37 N. J. L. 5–8; Seip's Est., 163 Pa. 423.

The declarations of Roberts were inadmissible: Wharton on Law of Evidence, sec. 172; Greenleaf's Evidence, 10th ed. sections 110, 111; Benford v. Sanner, 40 Pa. 9.

OPINION BY MR. JUSTICE MITCHELL, April 12, 1897:

At the close of the plaintiff's testimony defendant moved for a nonsuit on three grounds, 1, there was no evidence of the relation of attorney and client, 2, there was no evidence of negligence, fraud or collusion, and 3, there was no evidence of any damages sustained by the plaintiff. The court entered a nonsuit, and in refusing to take it off dwelt principally upon the failure to establish the relation of attorney and client between the parties, but we must of course assume that all three of the grounds were considered.

The payment of a fee is the most usual and weighty item of

evidence to establish the relationship of client and attorney, but it is by no means indispensable. The essential feature of the professional relation is the fact of employment to do something in the client's behalf. There must be an agreement, express or implied, for compensation, but whether payment is made in part or in whole by retainer in advance is not material. Nor is it even indispensable that the compensation should be assumed by the client. Ordinarily it is so from the nature of the employment which in the vast majority of cases involves the guarding or enforcement of the client's interest against an adverse one, and is therefore exclusive. But even adverse interests if to be amicably adjusted may be represented by the same counsel, though the cases in which this can be done are exceptional and never entirely free from danger of conflicting duties. In matters of the present kind it is not uncommon, in many places, including some at least of the counties of this state, for the same counsel to represent both borrower and lender, upon mortgage or similar security, although the former only is expected to pay the fees. In Scholes v. Brook, 63 Law Times, N. S. 837, plaintiff had invested money on mortgage relying on the opinion of " valuers," and the property proving inadequate she sued the valuers for negligence. ROMER, J., said: " No doubt in this case, as is common, the costs of Brook and Dansfield's valuation were intended to be paid by the mortgagor, just as the costs of the solicitors employed by the mortgagee were expected to be paid by the mortgagor in the sense that they would be paid out of the money advanced; but that does not determine the relation between the parties. I am satisfied on the evidence that, as between Brook and Dansfield on the one hand and the plaintiff on the other, it was understood by both that Brook and Dansfield were advising the plaintiff, and· that the plaintiff was going to act in her capacity as mortgagee, on the footing and faith of their valuation and of their being her advisors. . . . It was contemplated, according to what, as I said before, was a usual custom, that the costs of the valuation, if the proposed loan was effected, should be borne ultimately by the mortgagor; but to my mind it is clear that Brook and Dansfield were asked to make the valuation, to their knowledge as valuers, on behalf of the mortgagee, not the mortgagor." On appeal this was affirmed by the Lords Justices, 64 Law Times,

N. S. 674. So in Wittenbrock v. Parker, 102 Cal. 93, the custom was recognized, it being said, "The burden cast upon the mortgagor of paying for the services of the attorney selected by Bithell (the mortgagee) to guard his interests, was simply a condition of the loan, and did not alter the status of such attorney or diminish the duty or responsibility which he owed to his employer."

In the present case it is undeniable that the defendant was acting for Roberts the borrower, from whom he received his compensation, and to whom alone, upon the manifest understanding of all parties he was to look for it. But that fact does not of itself prevent the relation of attorney and client between plaintiff and defendant, if such was the mutual understanding. There was no evidence of custom in that respect, and the court below might not be able to say as matter of law, certainly we cannot, that such was in fact the custom. But outside of the existence of any general rule there was evidence from which the jury might have inferred that such was the understanding of these parties in this particular case.

The defendant unquestionably acted to some extent for and in behalf of the plaintiff. After the money was paid over he kept the mortgage which was then the property of plaintiff, and he put it on record. In so doing he was clearly acting for plaintiff, and if he had negligently delayed recording until a subsequent judgment or other incumbrance slipped in ahead of it, there can be no question that he would have been liable for the negligent performance even of a duty voluntarily assumed. But there was evidence that he did more for plaintiff than put the mortgage on record. Lawall testified that he told defendant " to search the title and the records in reference to liens " and that " he said he would," and more to the same effect. The presumption is that this was done in behalf of plaintiff. To Roberts, the borrower, the priority of other incumbrances was of no concern with regard to this loan, except as bearing on plaintiff's willingness to advance the money, but to plaintiff it was a material fact as part of the inducement or consideration for risking the investment.

We are of opinion therefore that there was sufficient evidence to submit to the jury on the existence of the relation of attorney and client in the case.

But the nonsuit was also erroneous for another reason. Independent of the relation of attorney and client, there was evidence, already noticed, that defendant undertook certain duties for the plaintiff. The learned judge rightly says that collusion or fraud could not be found on the evidence in the case, but this does not exclude liability arising from negligence. The principle settled in Coggs v. Bernard, 1 Smith's Lead. Cases, that one who undertakes to do, even without reward, is responsible for misfeasance, though not for nonfeasance, has been generally adopted. If therefore defendant, knowing that plaintiff was relying on him in his professional capacity to see that her mortgage was the first lien, although Roberts was to pay the fees, undertook to perform that duty, he was bound to do it with ordinary and reasonable skill and care in his profession, and would be liable for negligence in that respect.

The argument for the third ground of nonsuit, that it has not yet been shown that plaintiff has suffered any damage, would not be without force if the question were new, inasmuch as she took the mortgage as security only and the mortgagor when called upon may pay the debt, or the mortgage being sued out the property may bring enough to cover it. But the law is settled the other way. Plaintiff is entitled to the security she contracted for, and may recover the difference in value between that and what she actually got. The cause of action is the breach of duty, not the damages, which are only an incident. Miller v. Wilson, 24 Pa. 114, was very similar to the present case. The plaintiff had judgments which were a lien on certain real estate, and agreed with a purchaser of the latter to accept his bond secured by mortgage on the land. Defendant was employed as attorney to carry out the agreement, and in that capacity satisfied plaintiff's judgments, but neglected to have the mortgage recorded until other judgments were entered ahead of it. In meeting the point now made, Chief Justice BLACK said, " The argument is that plaintiff has not as yet suffered any actual loss from the defendant's violation of duty ; and that she can recover from Miller (defendant) only in case Carson (mortgagor) make default ; because the mortgage being but a security for the bond there is nothing due on the former until the condition of the latter is broken. But we hold it for clear law that defendant . . . . subjected himself to an immedi-

ate action, in which the plaintiff may recover compensation for all she has lost, and all she is likely to lose through his misconduct."

The cases have usually arisen on the statute of limitations, and it has been uniformly held that the right of action is complete so that the statute begins to run from the breach, although the damage may not be known or may not in fact occur until afterwards. In Moore v. Juvenal, 92 Pa. 484, it is said by the present chief justice, " Where the declaration alleges a breach of duty and a special consequential damage, the breach of duty and not the consequential damage is the cause of action, and the statute runs from the date of the former, and not from the time the special damage is revealed or becomes definite." See also Lilly v. Boyd, 72 Ga. 83, citing our own case of Rhines v. Evans, 66 Pa. 192.

On the question of damages the plaintiff's case was weak. The statement avers that the property is " not worth more than twelve hundred dollars." The witness Yeager thought it would be " cheap at ten or twelve hundred dollars," and Dr. Fegley, the owner of the first and second liens testified that the property had " rather increased during the last two years." That is about all there is on the subject. But although it is meager we cannot say that it is not enough to go to the jury. If they should find the security worthless, and the court in view of the fact that the verdict must necessarily be based largely on opinion on that point, should have any doubt on the subject, its powers are sufficient to prevent injustice to the defendant. In Green v. Dixon, 1 Jurist, 137, a similar action against an attorney for taking an insufficient security, Lord Abinger having indicated his opinion that plaintiff had made out a cause of action, a verdict was rendered for plaintiff for the amount advanced, he undertaking to convey the security taken to any one appointed by the defendant. The equity powers of courts even in suits at law in Pennsylvania are ample to protect the defendant in the same or equivalent manner.

The offer contained in the third assignment was clearly incompetent. There was no evidence, as the learned judge said, of collusion or fraud, and nothing to make the declarations of Roberts evidence against defendant.

The fourth assignment however must be sustained. The

authority of Edgar Lawall from his sister to pay over the money was a fact to which he could testify. Though agency cannot be proved by declarations of the alleged agent yet he is a competent witness to prove it, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject.

Judgment reversed and procedendo awarded.