630 A.2d 885

June C. WAPNER and Keith L. Wapner, H/W, Individually and as Parents and Natural Guardians of Charles P. Wapner and Peter W. Wapner, Their Minor Children, Appellants,

v.

Herbert J. SOMERS, M.D. and Robert Somers, M.D.

Superior Court of Pennsylvania.

Argued March 10, 1993.

Filed Aug. 24, 1993.

James E. Beasley, Philadelphia, for appellants.

Daniel F. Ryan, Plymouth Meeting, for appellees.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

This is an appeal from an interlocutory order sustaining preliminary objections by Herbert J. Somers to counts 50–52 in the Complaint filed by June C. and Keith L. Wapner individually and on behalf of their minor children Charles and Peter Wapner. The order, which was certified to this Court by the trial court as involving a controlling issue of law, dismissed Charles and Peter Wapner's claim for the loss of the consortium of their mother. We affirm.

This appeal arises in the context of a medical malpractice action filed by June Wapner against Dr. Herbert Somers and Dr. Robert Somers, not a party to this appeal, for failure to timely diagnose Mrs. Wapner's breast cancer. In conjunction with that claim, Mrs. Wapner's husband and children filed derivative claims for loss of spousal and parental consortium due to Mrs. Wapner's severe illness and incapacity.

Dr. Herbert Somers filed Preliminary Objections, in the nature of a Motion to Strike, requesting the trial court to strike certain paragraphs of the Complaint for failure to

comply with Pa.R.C.P. 1019(a), which were denied. Dr. Somers also filed Preliminary Objections, in the nature of a Demurrer, to the claim of loss of parental consortium which the trial court sustained, concluding that there was no legal basis for such a cause of action.

In support of their contention that Pennsylvania should now recognize claims for loss of parental consortium, the Wapners claim that failure to do so deprives the children of equal protection under Article 1, Section 11, of the Pennsylvania Constitution. In addition, the Wapners allege that Pennsylvania should recognize a cause of action for loss of parental consortium under circumstances in which the alleged tortfeasor could have foreseen such a loss as a natural consequence of their negligence. The Wapners maintain that since Dr. Somers knew that the children for whom the claim is made are afflicted with cerebral palsy and are totally dependant upon their mother for their care, this Court should now extend to these children the previously unrecognized cause of action of loss of parental consortium. We disagree.

In *Steiner by Steiner v. Bell Telephone Co. of Pennsylvania,* 358 Pa.Super. 505, 517 A.2d 1348 (1986), *aff'd. per curiam,* 518 Pa. 57, 540 A.2d 266 (1987), this Court, sitting *en banc,* addressed the issue of whether a cause of action for the loss of parental consortium should be recognized. In that case, the child's purported claim arose when the child's mother attempted to be connected to the police by a Bell Telephone operator when someone broke into their home. The mother was put on hold twice before her emergency call was connected. Shortly thereafter, the intruder interrupted the call and raped the mother. The mother suffered emotional problems after her attack which resulted in family discord and disruption.

In *Steiner,* we carefully considered the arguments by all parties to that case both in favor of and against recognizing a cause of action for loss of parental consortium. *Id.* 358 Pa.Super. at 509–516, 517 A.2d at 1350–1354. We also reviewed and analyzed the case law from other jurisdictions on this issue. *Id.* at 516–517, 517 A.2d at 1354. In that case, we

held that no cause of action for the loss of parental consortium would be recognized in Pennsylvania. *Id.* at 522, 517 A.2d at 1357.

In *Steiner, supra,* we based our decision on several factors. First, we recognized that there is no historical basis for such a claim as the common-law cause of action for loss of spousal consortium stemmed originally from a husband's right to sue for the loss of consortium for his wife. A loss of consortium recovery was originally considered compensation for the deprivation of a possessory right on behalf of the husband and the cause of action was unavailable to wives whose husbands suffered similar injuries. However, Pennsylvania eventually extended the right to sue for the loss of spousal consortium to wives. *See Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974).

We also recognized, in *Steiner,* the differences between spousal and filial relationships which justify the differential treatment between spouses and children. There, we stated:

Spouses enter into their relationship freely and by choice and do so to bind one another together into a permanent unity. A child, however, has no control over the commencement of the parent/child relationship, and rather then [sic] trying to become one with his parents, he perpetually strives to develop from a totally dependent person to one which is entirely independent. Although both relationships involve love, companionship, affection, guidance and care, the nature of those elements, the means by which they reach those ends is subtly but intrinsically different. Therefore, although identical labels can be attached to the elements of the spousal relationship and the parent/child relationship, substantively the relationships are different and not comparable.

*Id.* 358 Pa.Super. at 518–519, 517 A.2d at 1355.

In *Steiner,* we were also reluctant, on public policy grounds, to judicially expand tort liability when this is properly the role of the legislature. *Id.* at 521–522, 517 A.2d at 1356–1357. The legislature would be better able to weigh the costs to society,

in terms of increased insurance premiums and other costs, against the benefits to the children of tort victims. The legislature would also be able to set limits as to the amount and types of claims which could be brought.

This Court again considered the issue of whether a child can sustain a cause of action for the loss of parental consortium in *Schroeder v. Ear, Nose and Throat Association of Lehigh Valley, Inc.,* 383 Pa.Super. 440, 557 A.2d 21, *appeal denied,* 523 Pa. 650, 567 A.2d 653 (1989). There, we recognized that the claim for the loss of parental consortium was controlled by the holding in *Steiner, supra,* and we affirmed the trial court's dismissal of such a claim, as presenting no legally recognized cause of action.

In the present case, the Wapners contend that the children are denied equal protection under Article 1, Section 11, of the Pennsylvania Constitution through Pennsylvania's nonrecognition of loss of parental consortium claims. That section states:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

It is clear that Article 1, Section 11, can be invoked only with respect to a legal injury. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975) *citing Jackman v. Rosenbaum Co.,* 263 Pa. 158, 106 A. 238 (1919), *aff'd,* 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922). A legal injury is one for which the law recognizes a remedy or a cause of action. *Jackman* 263 Pa. at 168, 106 A. at 241. Nothing in Article 1, Section 11 can be construed as requiring that this Court create a legally recognized injury where none had previously been recognized. In fact, our supreme court has stated that even where a legal injury had previously been recognized at common law, it may be abolished by the legislature or may change and evolve over time to point where it would no longer constitute a compensable right, without there being a violation of Article 1, Section 11, of the Pennsylvania Constitution. *Singer,* 464 Pa. at 399–400, 346 A.2d at 903.

This issue was also addressed by this Court in *Steiner*, *supra*, where we rejected the notion that nonrecognition of a loss of parental consortium claim amounted to a constitutional violation. There, we stated:

[B]ecause there is no constitutional mandate compelling us to recognize a cause of action for loss of parental consortium, because there is presently no legal basis for allowing the cause of action, because there is no general or growing consensus that such a cause of action should be established, and because to allow such a cause of action is a policy determination which can most thoroughly and representatively be considered by the legislature, we do not recognize a child's cause of action for loss of parental consortium due to tortious interference of a third party.

*Steiner* at 522, 517 A.2d at 1357.

In addition, the Wapners assert that their case is unique and requires a re-examination of Pennsylvania policy as articulated in *Steiner* because here, Dr. Somers could foresee the harm that would result to the children due to their mother's illness and incapacity.

We agree that foreseeability of harm is a crucial element to establishing a claim in negligence. However, as this case involves a derivative claim, we are examining the extent of a tortfeasor's liability, after negligence has been established. We are unable to conclude that because an appellant can establish that the alleged harm suffered by the children was foreseeable to the alleged tortfeasor, we are thus compelled to create an entirely new cause of action. Pennsylvania, through its courts, has chosen not to extend the right to sue for damages to children whose parents are injured regardless of whether those injuries can be proved or whether the risk of harm to the children were known in advance to the tortfeasor. This is the public policy line that our courts have drawn limiting the extent of liability for any single tortious act. Moreover, the fact that harm to the children in this case was foreseeable does not permit a panel of this Court to overrule what is the established precedent of this Commonwealth.

After due consideration of the Wapner's claim, we conclude that it does not assert a cause of action recognized in this Commonwealth. We, therefore, affirm the order of the trial court.

Order Affirmed.

McEWEN, J., files a concurring opinion.

McEWEN, Judge, concurring.

The ruling of the majority is not, of course, subject to question, and so I rush to agreement with the eminent author of the majority Opinion and his perceptive expression of the presently prevailing law of this Commonwealth upon the claim of a child for loss of parental consortium. I proceed, however, to this concurring effort because I am so firmly convinced that tortious behavior so impacts upon the entire family of the injured party that each member of the family is a victim.

If one were to select a particular component of the vast change to which this latter half of the 20th Century has been witness, surely the ascendancy of the individual would find prominent mention. That ascendancy, though forced upon government and the other institutions of our society, is demonstrated by an enormously enhanced awareness of the worth and stature and dignity of the individual. We reap such a harvest in the present half century due, of course, to the toil and effort, sacrifice and struggle [1], of those who, during the first half of this century, wrested from government and the

1. It might even be said that the struggle is of so recurring a nature as to seem constant:

The whole history of the progress of human liberty shows that all concessions yet made to her august claims, have been born of earnest struggle.... If there is no struggle there is no progress....
This struggle may be a moral one, or it may be a physical one, and it may be both moral and physical, but it must be a struggle. Power concedes nothing without a demand. It never did and it never will.
Remarks of Frederick Douglass on August 4, 1857, reprinted in 2 Philip S. Foner, *The Life and Writings of Frederick Douglass 437* (1950). It was with a brogue and within but a decade that this very message inspired the Molly Maguires to confront their oppressors in the coal counties of Pennsylvania and thereby spark the organization of labor in this country.

affluent and the corporations, if not a respect for the dignity of each individual, a begrudging acceptance of the equality of each individual.

Intrinsic to the notion of the dignity of the individual is the right of the individual to be free from unwanted interference, intrusion—and harm. It is wrongful to harm, criminally so when intentional, and tortiously so when unintentional. And, of course, sanction must follow the infliction of harm—the imposition of penalty for criminal harm pursuant to the mandate of the natural law, and, as well, the imposition of damages for unintentional harm pursuant to the command of our Constitution that:

> ... every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law....

Article I, Section 11, *Constitution of the Commonwealth of Pennsylvania.*

This Court, as the majority states, in *Steiner by Steiner v. Bell Telephone Co. of Pennsylvania*, 358 Pa.Super. 505, 517 A.2d 1348 (1986) *aff'd*, 518 Pa. 57, 540 A.2d 266 (1988), declined the opportunity to recognize a cause of action by a child for loss of parental consortium. Our venerable colleague Judge John G. Brosky found himself unable to join the rationale of the majority in that case and reflected the view that children should not be denied a cause of action for loss of parental consortium when he entreated:

> The compensation of those who have wrongfully suffered losses is the very heart of our system of civil justice. Absent an affirmative reason why a person should not be so compensated, a cause of action should be allowed to proceed.

*Steiner by Steiner v. Bell Telephone Co. of Pennsylvania, supra*, 358 Pa.Super. at 522, 517 A.2d at 1358. As evidenced by this concurring expression, I echo that plea.

A major measure of the vast social change earlier mentioned has been accomplished by jurisprudential initiative, and, it might even be suggested, the Pennsylvania Supreme

Court has set the pace. It is undisputed that one accused of a crime in Pennsylvania enjoys broader rights of personal liberty than have been mandated by the United States Constitution. As for the civil courtroom, that court has made the individual the sure and certain beneficiary of jurisprudential enlightenment and has delivered due heed to the foregoing constitutional declaration as revealed, *inter alia,* by these decisions:

*Sinkler v. Kneale,* 401 Pa. 267, 164 A.2d 93 (1960). The Court established the right of an infant to pursue a cause of action for damages for prenatal injuries.

*Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965). The Court abolished the doctrine of charitable immunity.

*Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). The Court adopted the principle of strict liability in tort of a manufacturer or seller of a defective product.

*Beckham v. Travelers Ins. Co.,* 424 Pa. 107, 225 A.2d 532 (1967). The Court abandoned the artificial distinction between accidental means and accidental results in the determination of liability under policies of insurance.

*Reitmeyer v. Sprecher,* 431 Pa. 284, 243 A.2d 395 (1968). The Court held that failure of a landlord to carry out a promise to repair defective premises (made at the time of negotiation of the lease) imposed upon the landlord a liability in tort for damages or injuries suffered by the tenant as a result of the defect.

*Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968). The Court held that a purchaser was no longer required to show privity in an assumpsit suit against remote manufacturers for breach of implied warranty.

*Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970). The Court decided that an injured individual may recover from a negligent party even though the injuries arose in the absence of actual impact.

*Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970). The Court established a right of recovery for emotional distress caused by intentional and wanton acts.

*Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970). The Court abrogated the principle which imputed the contributory negligence of a driver to an owner-passenger.

*Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971). The Court abrogated the doctrine of parental immunity.

*Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). The Court abolished the doctrine of governmental immunity.

*Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974). The Court established the right of the wife to recover for loss of consortium.

*Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). The Court abolished the doctrine of sovereign immunity.

*Speck v. Feingold,* 497 Pa. 77, 439 A.2d 110 (1981). The Court held that the parents of a genetically defective child, born due to the negligence of physicians in performing vasectomy and abortion procedures, had a cause of action in tort against the physicians for the recovery of expenses attributable to the birth and raising of the child, and for the mental stress and physical inconvenience attributable to the birth of the child.

Almost two decades ago our Supreme Court declared that the infliction of an injury upon an individual causes the spouse of the injured individual to suffer every bit as much when the spouse is the wife of the injured party as when the wife is the injured party. *Hopkins v. Blanco, supra.* When a woman is injured and is both wife and mother, it is difficult to understand that, while her husband is entitled to a recovery for the suffering imposed upon him by the injury inflicted upon his wife, her children are precluded from recovery for the suffering imposed on them by the injuries inflicted upon their mother. Such a preclusion simply cannot stand the scrutiny

of logic. Surely the child of an injured party is as much a victim of tortious behavior as the spouse.

The legislature reflected just such a perspective when in 1989 it spurned the inane palaver of the new sociology and redeclared a commitment to the concept that the family is the foundation of society by proclaiming in the Family Preservation Act: [2]

### § 2172. Legislative findings and declarations of policy

(a) **Findings.**—The General Assembly finds and declares that:

(1) The family is the basic institution in society in which our children's sense of self-esteem and positive self-image are developed and nurtured. These feelings and values are essential to a healthy, productive and independent life during adulthood.

\*      \*      \*      \*      \*      \*

(b) **Declarations.**—It is therefore the policy of this Commonwealth that:

(1) The unique bond which exists between parent and child must be recognized as fundamental to the growth and development of children.

62 P.S. § 2172(a)(1) and (b)(1).

### § 2174. Family Preservation Program

\*      \*      \*      \*      \*      \*

(b) **Purpose.**—The Family Preservation Program shall be designed to preserve families through the creation, within families, of positive, long-term changes which will enable children who are victims of neglect or abuse or whose parents lack the ability to control their child's behavior without in-home family support to remain with their families, thereby reducing the more expensive and potentially

**2.** Act of July 7, 1989, P.L. 218, No. 35, § 1, 62 P.S. §§ 2171 et seq.

psychologically damaging incidence of out-of-home placement in foster care or group homes.

62 P.S. § 2174(b).

It is asserted that the decision to consider the child of an injured party as much a victim of tortious behavior as the spouse and to confer upon the child a right of recovery for the sadness and suffering a tortfeasor inflicts upon the family, will effect an increase in the cost of insurance. Proposed revision of the law invariably triggers dire intonement of fearful consequences. A review of the aforecited litany of decisions reveals that the proponents of revision were consistently confronted by a vested choir rendering in crescendo a familiar score of woeful consequences, including a flood of litigation, the sad abandonment of *stare decisis,* and the feast supplied to the schemer sector of the populace. The Supreme Court was impervious to these challenges. Once again, the cries are heard, though the wolf be nowhere near for, in this instance, application of cost/benefit principles will demonstrate that the cost factor, namely, the premium increase, is so minimal as to enable sole focus upon the worthiness of the concept of child consortium.

Nor may it be validly asserted that the Pennsylvania Supreme Court would thereby usurp the function of the legislature since the concept of loss of consortium has its origin in the common law. As our Supreme Court stated in clear and emphatic fashion:

In response to arguments that the Court should defer to legislative action, we stated in *Flagiello v. Pennsylvania Hospital,* [417 Pa. 486, 503, 208 A.2d 193, 202 (1965)]: "[T]he controverted rule [charitable immunity] is not the creation of the Legislature. *This Court fashioned it, and what it put together, it can dismantle."* (Emphasis added.) Again in *Falco v. Pados,* 444 Pa. 372, 382, 282 A.2d 351, 356 (1971) (*quoting Badigian v. Badigian,* 9 N.Y.2d 472, 481, 174 N.E.2d 718, 724, 215 N.Y.S.2d 35, 43 (1961)), we said:

"'. . . it is urged, that, if there is a remedy it must be given by the Legislature, if there is to be a change, it may

not be effected by the courts. This court has heard such arguments before and has answered them by saying that, where the rule is court made, it may be court modified if reason and a right sense of justice recommend it (citations omitted).' So too, in recent years this Court has had the fortitude and wisdom to effectuate changes in the law where 'reason and a right sense of justice' recommend it."

*Ayala v. Philadelphia Board of Public Education, supra* 453 Pa. at 600, 305 A.2d at 885. Moreover, the decisions of the Supreme Court upon governmental and sovereign immunity, by reason of the subsequent attention of the legislature, proved more essentially to be invitations to the legislature to address those areas of the law than an unconstitutional intrusion by the judiciary upon a companion branch of government.

Thus it is that, during the final decade of this century of the ascendancy of the individual, the Supreme Court might discern it appropriate to revisit this issue and conclude that the suffering reflected by the notion of consortium is intrinsic to the individual as family member and not simply as spouse.