**Kenneth J. TUMAN and Joan E. Tuman**

v.

**GENESIS ASSOCIATES, et al.**

Civ. A. No. 95–0272.

United States District Court,
E.D. Pennsylvania.

July 20, 1995.

Joseph F. Rizzo, Darby, PA, Gary David Ginsberg, Law Office of David Gary Ginsberg, Mount Laurel, NJ, for plaintiffs.

Marianne Bechtle Daniels, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, John J. Levy, Montgomery, McCracken, Walker & Rhoads, Cherry Hill, NJ, Cornelia Farrell Maggio, Exton, PA, Stephen Ledva, Jr., Edelstein, Mintzer and Sarowitz, Westmont, NJ, for Genesis Associates.

John J. Levy, Montgomery, McCracken, Walker & Rhoads, Cherry Hill, NJ, Stephen Ledva, Jr., Edelstein, Mintzer and Sarowitz, Westmont, NJ, for Patricia A. Mansmann.

Marianne Bechtle Daniels, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, John J. Levy, Montgomery, McCracken, Walker & Rhoads, Cherry Hill, NJ, for Patricia A. Neuhausel and Kathleen Fitzgerald.

*MEMORANDUM*

PADOVA, District Judge.

This case, apparently the first of its kind in Pennsylvania, is a "false memory" lawsuit [1] by parents against their daughter's former mental health counselors. [2] Plaintiffs, Kenneth J. Tuman and Joan E. Tuman, allege that while treating the Tuman's only child, Diane, for bulimia, Defendants implanted false memories that Plaintiffs murdered numerous children, sexually assaulted Diane, and routinely performed bizarre satanic rituals. Plaintiffs assert the following state-law claims: breach of contract (Count I), negligence (Count II), reckless, wanton, and malicious interference with filial relations (Count III), intentional infliction of emotional distress (Count IV), defamation (Count V), intentional misrepresentation (Count VI), and punitive damages (Count VII). Jurisdiction is based on diversity of citizenship, as Plaintiffs are New Jersey residents and Defendants reside in or have a principal place of business in Pennsylvania. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss Plaintiffs' Complaint. For the reasons set forth below, I shall grant in part and deny in part Defendants' Motion.

## I. FACTS ALLEGED

Plaintiffs allege the following facts, which I shall assume are true for purposes of the motion to dismiss. Beginning in July 1990, Diane, who was then twenty years old, became a Genesis client in order to improve her self esteem and to help deal with an eating disorder. Defendants informed Plaintiffs that Diane suffered from bulimia and would benefit from therapy, but that Plaintiffs must separate and detach from Diane for approximately two years. Plaintiffs agreed to the separation, and formed a contract with Genesis whereby Plaintiffs agreed to pay Defendants on a per-session basis, and Defendants agreed to provide Diane with psychological counseling and mental health therapy that was within acceptable standards of care.

Plaintiffs allege, however, that Defendants provided Diane with substandard care, and that Diane's mental health only deteriorated while Defendants treated her. Specifically, Plaintiffs allege that the Defendants "brainwashed" Diane by implanting false memories that (a) Plaintiffs were members of a satanic cult; (b) Plaintiffs murdered Diane's twin brother and other children during satanic rituals; (c) Kenneth Tuman raped Diane and impregnated her; (d) Plaintiffs murdered Diane and Kenneth's child during a satanic ritual; and (e) cult members intended to harm Diane for attempting to leave the cult. Additionally, on January 30, 1991, during a "rage therapy" session, Diane suffered a catatonic seizure, fell to the floor, and was left unattended for more than eight hours before Defendants sought appropriate medical care.

Plaintiffs also allege that on numerous occasions during group therapy sessions, Defendants stated that Diane was the victim of incest and ritual satanic abuse, and then invited Diane to tell group members the identity of her abusers. With this encouragement, Diane falsely stated that Plaintiffs committed incest and murder, and lead a satanic cult.

Finally, during the summer of 1992, Defendants solicited money from other Genesis patients to help Diane hide from the cult. Diane has assumed a new identity and is no longer in Pennsylvania, and Plaintiffs have

---

1. The term "false memory" has been used to describe lawsuits filed by former patients and their parents against psychotherapists who utilize a controversial technique known as recovered memory therapy that critics claim permits the therapist to implant in the patient's mind false memories of childhood sexual and physical abuse. *See, e.g.,* Mark Hansen, *More False Memory Suits Likely; Critics Buoyed by Father's Verdict Against Daughter's Psychotherapists,* 80 A.B.A.J. 36, Aug. 1994.

2. Defendants are Genesis Associates, a Pennsylvania corporation ("Genesis"), Patricia A. Mannsman, and Patricia A. Neuhausel. Plaintiffs allege Ms. Mannsman is a licensed psychologist who is an officer and shareholder of Genesis, and Ms. Neuhausel is a licensed social worker and certified addiction counselor who is also an officer and shareholder of Genesis.

Plaintiffs originally named Kathleen Fitzgerald, a clinical social worker employed by Genesis, as a Defendant; however, on April 17, 1995, Plaintiffs agreed to dismiss claims against Ms. Fitzgerald without prejudice.

Plaintiffs' claims against Genesis are based solely upon respondeat superior.

not seen or heard from her for more than two years.

## II. STANDARD FOR MOTION TO DISMISS

A claim may be dismissed under Fed. R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *See id.*

## III. DISCUSSION

Plaintiffs seek relief based on contract and tort theories of liability. I shall discuss these claims separately.

### A. Breach of Contract

■ Plaintiffs allege that they formed a contract with Defendants to provide Diane with adequate mental health counseling, but that Defendants breached the agreement by providing her with substandard care. Defendants contend that this contract claim must be dismissed because it is really a negligence claim in disguise. I disagree.

Significantly, Plaintiffs' contract claim is not based on allegations that Defendants provided *Plaintiffs* with inadequate care. Thus, this case is distinguishable from Pennsylvania cases [3] in which a plaintiff-client asserts both negligence and contract claims [4] based on the defendant's failure to provide the plaintiff with acceptable professional services. In such cases, courts have held that to state a distinct breach of contract claim, the plaintiff must allege that she "specifically instructed the defendant to perform a task that the defendant failed to perform, or . . . [that] the defendant made a specific promise upon which plaintiff reasonably relied to [her] detriment." *Resolution Trust Corp. v. Farmer,* 823 F.Supp. 302, 308 (E.D.Pa.1993) (citing *Sherman Indus., Inc. v. Goldhammer,* 683 F.Supp. 502, 506 (E.D.Pa.1988)); *Hoyer v. Frazee,* 323 Pa.Super. 421, 470 A.2d 990, 992–93 (1984).[5] The defendant's tort duty of care in such cases, which forms the basis of the plaintiff's negligence claim, arises from the professional relationship itself, and does not stem from the contract. To state a separate contract claim therefore, the plaintiff-client must allege that the defendant breached more than the non-contractually created duty of care.

In this case, by contrast, Plaintiffs' contract claim is based on Defendants' alleged breach of a contractually-based promise to Plaintiffs to provide *Diane* with adequate care, rather than the violation of a duty

3. The parties agree that Pennsylvania law governs Plaintiffs' claims, and I shall assume for purposes of the motion to dismiss that it does.

4. Under Pennsylvania law, a plaintiff claiming professional malpractice may seek contract and tort relief. *See Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744, 752 (1983) (a plaintiff alleging breach of professional services contract "may in some cases have to show a deviation from the standard of care, as in negligence, to establish breach"); *Grode v. Mutual Fire Ins. Co.,* 154 Pa.Cmwlth. 366, 623 A.2d 933, 934–36 (1993) (refusing to conclude based on preliminary objections that complaint failed to state separate contract and tort claims based on defendant's alleged failure to perform contractually required administrative and investigative services); *Fink v. Delaware Valley HMO,* 417 Pa.Super. 287, 612 A.2d 485, 488–89 (1992) (allegations that health maintenance organization refused to pay for surgery and negligently withheld necessary medical care stated separate and distinct causes of action for breach of contract and negligence). *See also Spiess v. Johnson,* 89 Or.App. 289, 748 P.2d 1020, 1023 (Or.Ct.App.1988) (under Oregon law, husband's allegations that psychiatrist agreed to provide counseling and treatment for wife and that psychiatrist breached agreement by failing to provide adequate treatment stated a claim for breach of contract).

5. The plaintiff in *Sherman,* a manufacturer of carwash equipment, alleged that it retained the defendant, an attorney, to provide advice regarding the validity and infringement of a competitor's patent. The defendant's advice was allegedly inadequate, and the plaintiff later suffered substantial losses for patent infringement. The district court concluded that the plaintiff's amended complaint sufficiently stated a contract malpractice claim because the complaint alleged that plaintiff specifically asked defendant to provide advice on (a) the validity and infringement of the competitor's patent; (b) whether an appeal of the trial court's infringement finding would be successful; (c) how to avoid infringement; and (d) the possibility and magnitude of damages. *See Sherman,* 683 F.Supp. at 507.

arising from a direct professional service rendered to Plaintiffs. Moreover, even absent this important distinction, Plaintiffs have alleged that they specifically instructed Defendants to treat Diane for bulimia, and Defendants agreed to provide adequate treatment to Diane using therapy requiring Plaintiffs to separate from their daughter for two years. Thus, even if the law requiring a specific instruction or a specific promise applied in this case, I would conclude that Plaintiffs have adequately stated a contract cause of action. Accordingly, I shall not dismiss the contract claim.

## B. Negligence

Plaintiffs allege that Defendants negligently implanted false memories in Diane, and that Plaintiffs suffered emotional distress as a result. Defendants assert that they owed no duty of care to Plaintiffs, and therefore Plaintiffs' negligence claim must be dismissed. Although I agree that the negligence claim must be dismissed, I disagree that Defendants owed Plaintiff no duty of care.

■ Under Pennsylvania law, important policies designed to limit a professional's exposure to potentially unlimited negligence liability "require privity (an attorney-client or analogous professional relationship *or* a specific undertaking) to maintain an action in negligence for professional malpractice." *Guy*, 459 A.2d at 746 (emphasis added) (citing *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) (privity requirement avoids "liability in an indeterminate amount for an indeterminate time to an indeterminate class")). Pennsylvania law may, therefore, permit a plaintiff alleging only a specific undertaking to maintain a claim for professional negligence.[6] Even if a specific undertaking alone is not a sufficient prerequisite to maintaining such a claim, however, I predict that the Pennsylvania Supreme Court would conclude that a specific undertaking coupled with reasonably foreseeably harm to an identifiable third party is sufficient to maintain a claim for professional negligence.

The Pennsylvania Supreme Court has held that where the policies underlying the privity requirement "pale in comparison to the harm at issue, ... lack of privity does not bar a third party from maintaining a cause of action against a professional." *DiMarco*, 583 A.2d at 425 n. 1 (concluding that a physician's duty of care extends to any third person whose health would be threatened by contact with a patient infected with a communicable disease).[7] *See also Crosby v. Sultz*, 405

---

**6.** It is not altogether clear under Pennsylvania law that a non-client who alleges only a specific undertaking may maintain a claim for professional negligence. First, despite the quoted language from *Guy*, it is uncertain whether a specific undertaking itself constitutes privity, or is a recognized exception to privity. *See, e.g., DiMarco v. Lynch Homes—Chester County, Inc.*, 525 Pa. 558, 583 A.2d 422, 426 (Pa.1990) (Flaherty, J., dissenting) (distinguishing between privity and a specific undertaking). Second, Pennsylvania courts have repeatedly indicated that the specific undertaking rule has its origin in dicta from the nineteenth century case of *Lawall v. Groman*, 180 Pa. 532, 37 A. 98, 99 (1897), *see Guy*, 459 A.2d at 748, 749; *DiMarco*, 583 A.2d at 426 (Flaherty, J., dissenting), and have not expressly defined the necessary elements of a specific undertaking claim. *See Guy*, 459 A.2d at 749 ("At the very least, *Lawall* would require a specific undertaking on the [professional's] part to perform a specific service for [the] third party, coupled with the reliance of the third party and the [professional's] knowledge of that reliance.").

**7.** The plaintiff in *DiMarco* was an individual who had sexual relations with a patient infected with the hepatitis B virus. The patient's doctor properly diagnosed the infection, but failed to warn the patient that she could spread the virus by having sexual relations within 6 months of exposure. The plaintiff contracted the virus from the patient, and sued the doctor for failing to properly inform the patient about her ability to transmit the virus. The Pennsylvania Supreme Court noted that because communicable diseases are readily spread from person to person, and because doctors are "the first line of defense" against the spread of such diseases, and they know how to prevent the infection of others, physicians must properly inform infected patients how to avoid spreading the disease. *See DiMarco*, 583 A.2d at 424. Because such measures cannot protect the patient who has already been infected, but instead only protects uninfected third persons, the court held that

the duty of a physician in such circumstances extends to those within the foreseeable orbit of risk of harm. If a third person is in that class of persons whose health is likely to be threatened by the patient, and if erroneous advice is given to that patient to the ultimate detriment of the third person, the third person has a cause of action against the physician, because the physician should recognize that the ser-

Pa.Super. 527, 592 A.2d 1337, 1343 (1991) ("[P]hysicians [must] protect third parties from harm which could be inflicted on such persons by the physicians' patients ... if it was reasonably foreseeable that third persons would be harmed by the conduct of the physicians."). *Cf. Guy*, 459 A.2d at 755 (McDermott, J., dissenting) (noting that "the continued existence of privity as a defense to an action in negligence is on very thin ice," and that "the New York Court of Appeals has held that [the policy concerns expressed in *Ultramares* ] are inapplicable where the negligence of a professional is directed to a 'known' third party") (citation omitted).

 A careful review of Pennsylvania law, therefore, indicates that although a plaintiff generally must show a professional relationship to maintain a claim for profes-

sional negligence, the absence of such a relationship does not necessarily bar a plaintiff's recovery where the defendant's negligence causes substantial harm to an identifiable and readily determinable class of plaintiffs. Accordingly, although there may be some uncertainty whether a specific undertaking alone is sufficient to maintain a claim for professional malpractice, I predict that the Pennsylvania Supreme Court would conclude that in the absence of any other statutory duty of care,[8] a therapist owes a duty of reasonable care to a patient's parents, where (1) the therapist specifically undertook to treat the child for the parents; (2) the parents relied upon the therapist; (3) the therapist was aware of the parents' reliance; and (4) it was reasonably foreseeable that the parents would be harmed by the therapist's conduct.[9]

vices rendered to the patient are necessary for the protection of the third person.
*Id.* at 424–25.

I note that Plaintiffs have not alleged facts that are comparable to the unique circumstances present in *DiMarco*.

8. For example, the Mental Health Procedures Act ("MHPA"), 50 Pa.Stat.Ann. §§ 7101–7503 (Supp.1995), provides that "[i]n the absence of willful misconduct or gross negligence, ... a person who participates in a decision that a person be examined or treated under [the MHPA] ... shall not be civilly or criminally liable for such decision or any of its consequences." § 7114. Additionally, the Child Protective Services Law ("CPSL"), 23 Pa.Cons.Stat. Ann. §§ 6301–6384 (1991 & Supp.1995), provides that "[a] person ... that participates in good faith in the making of a report [of suspected child abuse] ... shall have immunity from civil and criminal liability that might otherwise result by reason of those actions." § 6318.

Because Defendants have not argued that the provisions of the MHPA or the CPSL apply to facts alleged in this case, I only consider Defendants' common law duty of care.

9. In *Sullivan v. Cheshier*, 846 F.Supp. 654 (N.D.Ill.1994), parents sued a psychologist who allegedly implanted false childhood memories of sexual abuse in the mind of the parents' daughter. The district court, construing Illinois law, refused to dismiss the parents' claim that defendants intentionally interfered with the parent-child relationship. *See id.* at 661. However, the district court dismissed plaintiffs' negligence claim because "Illinois generally does not allow anyone but the patient to sue over negligent malpractice even where that malpractice causes physical injury to others, as occurs when an

infectious disease is improperly treated and is passed on to family members." *Id.* at 660 n. 7. Under Pennsylvania law, however, a physician's duty may apply to a broader class of plaintiffs. *See DiMarco*, 583 A.2d at 425 (physician treating patient with a communicable disease owes a duty of care to the class of persons whose health is likely to be threatened by the patient, including anyone who is physically intimate with the patient).

Additionally, a panel of New York's intermediate appellate court, explicitly declining to follow *DiMarco*, has recently held that a physician has no common law duty of care that extends to the spouse of a patient who contracts tuberculosis as the result of the physician's alleged negligent failure to properly diagnose the patient. *See Ellis v. Peter*, 211 A.D.2d 353, 356, 627 N.Y.S.2d 707, 709 (1995). The court stated that

were we to extend the defendant's duty of care to the wife under these circumstances, we perceive no demarcation of the point where that duty would end. In other words, if the physician owes a duty to a patient's spouse to warn her about his patient's condition, such a duty would logically extend to other individuals with whom the patient was in close contact, such as other relatives, e.g., his children, co-workers, or even fellow commuters. Clearly such individuals represent the "community at large" to whom a physician owes no duty of care. Thus, the imposition of a common-law duty upon the defendant herein with respect to the wife could expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs.

I note that my very narrow holding requiring both a specific undertaking plus reasonably foreseeable harm to an identifiable third party does not present the problem of potentially unbounded tort liability that the *Ellis* court feared.

Plaintiffs' allegations adequately meet this standard. Because Plaintiffs funded Diane's counseling sessions, and severed all contact with her after Defendants informed them that Diane would benefit from the Genesis therapy, I may fairly infer that Plaintiffs relied upon Defendants to provide adequate therapy for Diane, and that Defendants were aware of this reliance. Further, because Defendants allegedly negligently induced Diane to falsely believe that her father raped her, and that her parents murdered her twin brother, her child, and other small children during satanic rituals, it was reasonably foreseeable that Plaintiffs would be harmed by Defendants' conduct. *Cf. Montoya v. Bebensee*, 761 P.2d 285, 288–89 (Colo.Ct.App.1988) (concluding that it is readily foreseeable that harm to a parent may result from negligent false accusations of child abuse); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994) (stating that injury is almost certain to result when a parent is falsely accused of sexually abusing a child).[10] Accordingly, based on the allegations of the Complaint, I conclude that Defendants owed Plaintiffs a duty of reasonable care.[11]

■ My inquiry does not end there, however, because Plaintiffs allege purely emotional injuries as a result of Defendants' negligence. Under Pennsylvania law, to state a claim for emotional distress damages, a plaintiff must allege physical injury resulting from defendant's tortious conduct. *See Rolla v. Westmoreland Health Sys.*, 438 Pa.Super. 33, 651 A.2d 160, 163 (1994) (to state a claim for either intentional or negligent infliction of emotional distress, plaintiff must allege physical injury). With this recognized limitation in mind, I therefore predict that the Pennsylvania Supreme Court would conclude that a non-patient must also plead physical injury to recover emotional distress damages caused by a therapist's negligent conduct.[12] Because Plaintiffs have not alleged physical injury, I shall dismiss this claim but grant Plaintiffs leave to amend to allege physical injury, if any.

## C. Interference With Filial Relations

■ The Complaint alleges that as a result of Defendants' conduct, Plaintiffs have been denied the comfort, aid, companionship, and support of their only child. However, Pennsylvania's courts have consistently refused to recognize a parent's direct cause of action for loss of filial consortium caused by the inter-

**10.** The Texas Supreme Court also held, however, that the parent's injury is outweighed by the "great social utility in encouraging mental health professionals to assist in the examination and diagnosis of sexual abuse," and that a mental health professional therefore owes no duty to a non-patient father not to negligently misdiagnose the condition of the child. *Bird*, 868 S.W.2d at 769–70. By contrast, the Colorado Court of Appeals considered the "great social utility of having therapists make reports of suspected child abuse," *Montoya*, 761 P.2d at 288, but nevertheless concluded that "a mental health care provider owes a duty to any person, who is the subject of any public report or other adverse recommendation by that provider, to use due care in formulating any opinion which such report or recommendation is based." *Id.* at 289. The Pennsylvania legislature has determined that a "good faith" standard of care governs persons covered by the CPSL who report suspected child abuse. *See supra* note 8.

**11.** Defendants argue that "[t]o allow a duty to run to the parents in these circumstances would place the defendant professional in the untenable position of having to choose between her duty to the patient and a duty to the relatives of the patient or to some other third party." Defs.' Suppl.Br. at 6. I disagree that my holding cre-

ates any problem of conflicting allegiances. The therapist's two duties dovetail to a singular duty to provide reasonably acceptable mental health therapy to the patient. As long as the therapist satisfies this requirement (which conceivably is not satisfied by using techniques that implant in the patient's mind *false* memories of childhood sexual abuse), the therapist satisfies her duties to both the patient and the parents.

Further, my narrow holding does not subject therapists to negligence liability whenever parents experience emotional injury that may result when a child seeks mental health counseling. There is a vast difference between using acceptable therapy to help a patient understand emotional wounds suffered as a result of her parents' inadequate caregiving, and negligent techniques that create false memories of severely abusive parenting that necessarily injure the parents and the patient.

**12.** Any other conclusion would produce the anomalous result under Pennsylvania law that a patient who does not suffer physical injury would be precluded from recovering emotional distress damages from her therapist, whereas a third party non-patient could recover emotional distress damages regardless of whether she also suffered physical injury.

ference of a third party. *See Jackson v. Tastykake, Inc.*, 437 Pa.Super. 34, 648 A.2d 1214 (Pa.Super.Ct.1994); *Wapner v. Somers*, 428 Pa.Super. 187, 630 A.2d 885 (1993); *McCaskill v. Philadelphia Hous. Auth.*, 419 Pa.Super. 313, 615 A.2d 382, 384–85 (1992); *Steiner v. Bell Telephone Co.*, 358 Pa.Super. 505, 517 A.2d 1348, 1353 (1986) (citing *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Quinn v. Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914)). Accordingly, I shall dismiss this claim.

## D. Intentional Infliction of Emotional Distress

■ Defendants assert that because Defendants owed no duty to Plaintiffs with regard to Diane's treatment, Plaintiffs' intentional infliction of emotional distress claim must be dismissed. Defendants' assertion cannot be true. Regardless of whether Defendants owed Plaintiffs any duty of care with respect to Diane's mental health counseling, Defendants had independent duties not to intentionally inflict emotional distress upon Plaintiffs. Because Defendants have not otherwise challenged the sufficiency of this claim, I shall not dismiss it at this time. *Cf. Bartanus v. Lis*, 332 Pa.Super. 48, 480 A.2d 1178 (1984) (allegations that defendant persuaded plaintiff's son to stay away from plaintiff by repeatedly telling son that plaintiff was unloving, a whoremaster, liar, and con artist, and that plaintiff's house was dirty, poisonous, and rat infested, sufficiently stated claim for intentional infliction of emotional distress).

## E. Defamation

■ Plaintiffs allege that during group therapy sessions, Defendants made slanderous statements about Plaintiffs by stating that Diane was the victim of incest and satanic ritual abuse, and that Diane served as Defendants' "mouthpiece" when she later named Plaintiffs as her abusers. Defendants assert that Plaintiffs' defamation claim must be dismissed because the Complaint fails to allege that Defendants published any defamatory communication. I disagree.

■ To state a claim for defamation, a plaintiff must allege (1) a defamatory communication; (2) pertaining to the plaintiff; (3) published by the defendant to a third party; (4) who understood that the communication pertained to the plaintiff and had a defamatory meaning; and (5) that resulted in plaintiff's injury. *See Petula v. Mellody*, 138 Pa.Cmwlth. 411, 588 A.2d 103 (1991); 42 Pa.Cons.Stat.Ann. § 8343 (1982). Although Plaintiffs have not alleged that Defendants specifically stated that Plaintiffs committed incest and murder, Plaintiffs have alleged that Defendants implanted in Diane false memories of severe childhood abuse, and in this way induced and encouraged Diane to publish Defendants' defamatory statements about her parents. *See* Restatement (Second) of Torts § 577 cmt. f (1977) ("One is liable for publication of defamation by a third person whom as his servant, agent, or otherwise he directs or procures to publish defamatory matter."). Further, Defendants' statements, although not specifically naming Plaintiffs, may sufficiently pertain to Plaintiffs based on the context in which they were made. *See Weinstein v. Bullick*, 827 F.Supp. 1193, 1199 (E.D.Pa.1993) (defamed party need not be specifically named in a defamatory statement, however, "if she is pointed to by description or circumstances tending to identify her"). Accordingly, I shall not dismiss the defamation claim at this time.

## F. Intentional Misrepresentation

■ Defendants similarly assert that because Defendants owed no duty to Plaintiffs with regard to Diane's treatment, Plaintiffs' fraud claim must be dismissed. Again, Defendants' assertion is an inadequate basis for dismissal. Because Defendants have not otherwise challenged the sufficiency of this claim, I shall not dismiss it at this time.

## G. Punitive Damages

■ Defendants assert that the Complaint fails to allege conduct sufficiently extreme to warrant punitive damages. I disagree. Because Plaintiffs' "claim" for punitive damages involves factual issues that may not properly be resolved in a motion to dismiss, I shall not dismiss this prayer for relief at this time. *Cf. Doe v. Kohn Nast & Graf, P.C.*, 862 F.Supp. 1310, 1329 (E.D.Pa.1994)

(noting that punitive damages "claim" involves factual issues that may not be resolved in a motion for summary judgment).

An appropriate order follows.

### ORDER

AND NOW, this 19th day of July 1995, it is hereby ORDERED that Defendants' Motion to Dismiss (Document No. 7) is GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

1. Plaintiffs' negligence claim (Count II) is DISMISSED WITHOUT PREJUDICE;

2. Plaintiffs are granted leave to file an Amended Complaint on or before Friday, August 4, 1995, alleging facts, if any, supporting a negligence claim, as set forth in the accompanying memorandum;

3. Plaintiffs' interference with filial relations claim (Count III) is DISMISSED WITH PREJUDICE;

4. In all other respects, Defendants' motion is DENIED.