**Chris T. BRUNEA, Plaintiff,**

v.

**Dr. Thomas GUSTIN and Dr. Richard Gudowski, Defendants.**

**Civ. A. No. 91–129 Erie.**

United States District Court,
W.D. Pennsylvania.

Oct. 10, 1991.

Chris T. Brunea, pro se.

J. Douglas Murphy, Erie, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

This action alleges medical malpractice in the diagnosis and treatment of plaintiff Chris Brunea during a stay at Hamot Medical Center in Erie, Pennsylvania. The case was originally filed in the Western District of New York. By order of that court dated June 6, 1991, the action was transferred to the Western District of Pennsylvania due to lack of personal jurisdiction over the defendants in the State of New York.

The plaintiff alleges that he suffered a traumatic brain injury in a fall in September, 1986. Plaintiff states that he went to over ten hospitals for diagnosis and treatment from September, 1986, into March, 1987. (Plaintiff's complaint at Count 7). In March, 1987, plaintiff began treatment with Dr. Gustin and entered Hamot Medical Center for diagnosis and treatment. (Complaint at count 8). Plaintiff alleges that during his stay at Hamot, Dr. Gustin "misdiagnosed plaintiff's condition as functionally mentally ill-manic depressive, or

Bipolar Disorder, and failed to recognize and treat plaintiff's head injury symptomatology which causes similar symptomatology and also causes cognitive problems." (Plaintiff's complaint at count 14).

On July 7, 1991, defendant Gustin filed with this court a motion to dismiss and/or motion for judgment on the pleadings. Gustin alleges that plaintiff's cause of action is time-barred by the Pennsylvania two year statute of limitations. Defendant Gustin also avers that because Pennsylvania law does not recognize a claim for lack of informed consent regarding plaintiff's lithium treatment, therefore Count III of plaintiff's second amended complaint fails to state a claim upon which relief can be granted. Defendant Gustin also states that Counts IV and V of plaintiff's second amended complaint fail to state a claim upon which relief can be granted, as they allege a cause of action based upon the plaintiff's removal from disability coverage.

■ The court will first examine the applicable statute of limitations. A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and substantive law includes statutes of limitations. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *McGowan v. University of Scranton,* 759 F.2d 287, 290 (3d Cir.1985).

The relevant provisions of Pennsylvania law provide:

§ 5502. Methods of computing periods of limitation generally

(a) General Rule—The time within which a matter must be commenced under this chapter shall be computed, except as provided by subsection (b) or by any other provision of this chapter, from the time the cause of action accrued, the criminal offense was committed or the right of appeal arose. 42 Pa.Cons.Stat.Ann. § 5502 (Purdon 1981).

§ 5524. Two year limitation.

The following actions and proceedings must be commenced within two years:

. . . .

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another. 42 Pa.Cons.Stat.Ann. § 5524 (Purdon 1981).

■ The purpose of a statute of limitations is to encourage the filing of claims promptly by giving no more than a reasonable time within which to make a claim. By limiting the period in which a claim may be made, the statute protects defendants from having to defend actions where the truth-finding process is impaired by the passage of time. *United States v. Kubrick*, 444 U.S. 111, 117–118, 100 S.Ct. 352, 356–357, 62 L.Ed.2d 259 (1979); *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985).

As a general rule, a statute of limitations begins to run "as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono International Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). Persons asserting a claim are under a duty to use "all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period ... even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on the mere lapse of time." *Id.* at 84–85, 468 A.2d at 471, *Baily v. Lewis*, 763 F.Supp. 802, 804 (E.D.Pa.1991).

■ For tort actions, the general rule is that the cause of action accrues at the time of the last event necessary to complete the tort. Usually, this is the time the putative plaintiff is injured. *Kubrick*, 444 U.S. at 120, 100 S.Ct. at 358. An injured party, however, cannot make a claim until he has or should have had notice that he had an action to bring. Thus, the Supreme Court has held that an injured party's cause of action does not accrue until he learns of his injury. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In most cases, when a person learns of his injury, he is on notice that there has been an invasion of his legal rights, and that he should determine whether another may be liable to him. *Zeleznik, supra*, 770 F.2d at 22.

■ However, in some circumstances, a person may know that he has been injured but not be sufficiently apprised by the mere fact of injury to understand its cause. *McGowan v. University of Scranton*, 759 F.2d 287 (3d Cir.1985). Where an injured person is unable, "despite the exercise of diligence, to determine the injury or its cause," the discovery rule tolls the running of the statute of limitations. The discovery rule is a judicially created device that provides that the limitations period begins to run when the plaintiff knows or should know: (1) that he has been injured, and (2) the injury has been caused by another party's conduct. *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 135–137, 471 A.2d 493, 500 (1984). The proverbial clock begins to run when the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Zeleznik, supra*, 770 F.2d at 23; *Mazur v. Merck & Co., Inc.*, 742 F.Supp. 239, 249 (E.D.Pa.1990).

■ The party seeking to invoke the discovery rule is under "a heavy burden of inquiry." *Lowe v. Johns–Manville Corp.*, 604 F.Supp. 1123, 1127 (E.D.Pa.1985). Under Pennsylvania law, "the standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard." *Rendenz by Rendenz v. Rosenberg*, 360 Pa.Super. 430, 435, 520 A.2d 883 (1987). The fact that this individual plaintiff may have lacked knowledge of his or her injury is "irrelevant," "the statute is tolled only if a reasonable person in the plaintiff's position would have been unaware of the salient facts."

*Rendenz*, 360 Pa.Super. at 435, 520 A.2d at 886. In defining reasonable diligence, the courts have stated "there are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Urland v. Merrell–Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1273 (3d Cir.1987) (quoting *Deemer v. Weaver*, 324 Pa. 85, 90, 187 A. 215, 217 (1936)). Moreover, with respect to knowledge of a claim, "plaintiffs need not know that they have a cause of action, or that the injury was caused by another party's wrongful conduct, for once a plaintiff possesses the salient facts concerning the occurrence of his injury and *who* or *what* caused it, he has the ability to investigate and pursue his claim." *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir.1990) (emphasis in original); *accord Citsay v. Reich*, 380 Pa.Super. 366, 370–371, 551 A.2d 1096, 1098 (1988); *Baily v. Lewis*, 763 F.Supp. 802, 807 (E.D.Pa.1991).

■ Because the standard of knowledge is an objective one, it is typically the nature of the injury that will determine whether the discovery rule applies. The rule applies where an injury "is not readily discernible." *Stauffer v. Ebersole*, 385 Pa.Super. 306, 309, 560 A.2d 816, 817, *alloc. denied*, 524 Pa. 622, 571 A.2d 384 (1989). The discovery rule has thus been applied in cases involving medical malpractice where the injury was not readily apparent, *see Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959) (surgical sponge left in abdomen during operation performed nine years earlier), *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983) (negligent root canal), and in cases of "creeping diseases" where the plaintiff has been exposed to hazardous substances but the symptoms of the injury do not develop for some time. *See Trieschock v. Owens Corning Fiberglas Co.*, 354 Pa.Super. 263, 511 A.2d 863 (1986) (asbestosis from exposure to asbestos).... These examples are not, of course, exhaustive, but they are illustrative of the type of injury which will justify application of the discovery rule in that they involve circum-

stances in which "no amount of vigilance" would have enabled the plaintiff to discover the injury or its cause within the limitations period. *Pocono International Raceway*, 503 Pa. at 85, 468 A.2d at 471; *Baily v. Lewis*, 763 F.Supp. at 807.

The Pennsylvania courts have been unwilling to allow the incapacity of a plaintiff to toll the statute of limitations. The Pennsylvania judicial code specifically provides that "except as otherwise provided by statute, insanity or imprisonment does not extend the time limited by this subchapter for the commencement of a matter." 42 Pa. Cons.Stat.Ann. § 5533(a). Moreover, courts applying Pennsylvania law have consistently stated that the statute of limitations runs against persons under a disability, including one who is mentally incompetent. *Greenberg v. McCabe*, 453 F.Supp. 765, 767 (E.D.Pa.1978), *aff'd without opinion*, 594 F.2d 854 (3d Cir.), *Walker v. Mummert*, 394 Pa. 146, 148, 146 A.2d 289, 290 (1958), *Hippensteel v. W.C.A.B.*, 72 Pa. Commw. 261, 263, 457 A.2d 137, 138 (1983).

This refusal to toll the statute based on the disability of a plaintiff is consistent with Pennsylvania's emphasis on an objective standard of reasonable diligence. The court in *Barren by Barren v. United States*, 839 F.2d 987 (3d Cir.) *cert. denied*, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988) stated that "even though malpractice was a substantial factor in the plaintiff's inability to recognize that very malpractice," the running of the limitations period would not be extended ... Allowing the plaintiff to file later than an objectively reasonable person would be tantamount to ruling that a plaintiff's mental infirmity can extend the statute of limitations. Such extensions have uniformly been rejected by this and other courts of appeals ... We recognize that our holding in this case visits a harsh result on the plaintiff. However, limitations periods must be strictly construed. *Baily* at 809.

It is important to recognize the importance of statutes of limitations in Pennsylvania jurisprudence. The Pennsylvania courts have stressed the strong policy rationales that underlie the statute of limita-

tions. The Pennsylvania Supreme Court has stated:

> The defense of the statute of limitations is not a technical defense but substantial and meritorious ... Such statutes are not only statutes of repose, but they supply the place of evidence lost or impaired by lapse of time, by raising a presumption which renders proof unnecessary ... Statutes of limitation are vital to the welfare of society and are favored in the law.

*Schmucker v. Naugle*, 426 Pa. 203, 205–206, 231 A.2d 121, 123 (1967).

█ It is against this background that the timeliness of the complaint filed by Mr. Brunea must be considered. Using the *Zeleznik* standard, *supra*, the clock began to run when the injured party possessed sufficient critical facts to put him on notice that a wrong had been committed. It is not necessary that Mr. Brunea knew that he had a cause of action, or that the injury was caused by another party's conduct, but only that he possessed the salient facts concerning the occurrence of his injury and who or what caused it. *Vernau*, 896 F.2d at 46.

The court must first determine whether the injury suffered was "not readily discernible" in order for the plaintiff to be accorded the benefit of the discovery rule. The court believes that the salient facts of Mr. Brunea's injury were known to him during the period from March 13, 1987 until April 2, 1987 when he was staying at Hamot Medical Center. The gravaman of the plaintiff's complaint with regard to Dr. Gustin is that "during plaintiff's stay at the Hamot, defendant Gustin misdiagnosed plaintiff's condition ..." (Count 14 of plaintiff's complaint). The court believes that a reasonable person in the plaintiff's position would have been aware of the salient facts of the misdiagnosis and filed the cause of action within two years of his release from the Hamot Medical Center on April 2, 1987. As the plaintiff did not commence this action until November 7, 1989, the court determines that this action is time-barred, and should be dismissed.

The court believes that the plaintiff's injury was readily discernible before November 7, 1989, the date of the commencement of this action. An objectively reasonable person would have had "reason to awaken inquiry and direct diligence in the channel in which it would be successful," *Urland*, 822 F.2d at 1273, sometime sooner than the two years and six months beyond his release from Hamot Medical Center when this action was initiated.

The court believes that the plaintiff "possessed the salient facts concerning the occurrence of his injury and who or what caused it" *Vernau*, 896 F.2d at 46, in sufficient time to commence his suit within the two year limitations period. This case can be differentiated from the cases where the injury was not readily apparent, such as the surgical sponge left in the abdomen during an operation, or those cases of "creeping diseases" where the symptoms of the injury do not develop for some time. Rather each allegation in Count 14 of the plaintiff's complaint refers to a specific violation of "acceptable medical standards" that occurred during the plaintiff's stay at the Hamot Medical Center from March 13, 1987 to April 2, 1987.

This court must also follow the direction of the Pennsylvania courts who have been unwilling to allow the incapacity of the plaintiff to toll the statute of limitations. Thus, even under a scenario whereby Dr. Gustin's alleged misdiagnosis was a factor in the plaintiff's delay in assessing the malpractice, it is still the case that "even though malpractice was a substantial factor in the plaintiff's inability to recognize that very malpractice, the running of the limitations period would not be extended." *Barren by Barren*, *supra*, 839 F.2d at 987.

This *Barren* case appears damaging to any possible contention on the plaintiff's part that that he was not aware of the malpractice until he "consulted other physicians and a neuropsychologist, who reversed the misdiagnosis ..." (Second amended complaint of plaintiff at count 15). The law of the State of Pennsylvania simply does not permit a later diagnosis, whether labeled a misdiagnosis or other-

wise, to extend the statute of limitations beyond the two year period when the injury accrued. Nor does it permit the plaintiff to fall within the narrow exception of the discovery rule whereby an injury is not readily discernible. Rather the objective reasonable standard must be applied whereby the latest date for the two year period to begin to run was the plaintiff's discharge from Hamot Medical Center on April 2, 1987.

Like the *Baily* court, this court recognizes that its holding in this case visits a harsh result on the plaintiff. However, the court is convinced that similar to *Baily*, "It is clear that under Pennsylvania law, where the plaintiff is aware of 'the facts concerning the occurrence of his injury' and the 'causative relationship' between the injury and the defendant's conduct, the fact that the plaintiff does not know that he has a cause of action will not toll the statute of limitations. *Vernau v. Vic's Market,* 896 F.2d at 46.

The court believes that the delay of approximately 136 weeks beyond the plaintiff's release from Hamot Medical Center prior to filing of this suit does not meet the objective standard of reasonable diligence required of a plaintiff. Under the *Pocono International* standard, *supra,* 503 Pa. at 84, 468 A.2d at 471, the statute of limitations began to run "as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." The court finds that the right to institute and maintain this suit began no later than April 2, 1987, and as a result the filing of this suit on November 7, 1989 was untimely. This court also finds that the plaintiff has not met the narrow requirements of the Pennsylvania discovery rule exception. As a result, the motion to dismiss the claim filed by defendant Thomas Gustin will be granted. Because all claims against Dr. Gustin will be dismissed, defendant Gustin's motion to dismiss specific claims within the complaint will be disregarded as moot.