**Brooke LUJAN,**

v.

**Patricia MANSMANN, Patricia
Neuhausel, and Genesis
Associates.**

**Civil Action No. 96–5098.**

United States District Court,
E.D. Pennsylvania.

March 14, 1997.

Joseph F. Rizzo, Darby, PA, for Plaintiff.

Stephen Ledva, Jr., Edelstein, Mintzer & Sarowitz, Philadelphia, PA, Cynthia B. Mac-Queen, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Patricia Mansmann.

Cynthia B. MacQueen, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Patricia Neuhausel.

Cynthia B. MacQueen, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Cornelia Farrell Maggio, Philadelphia, PA, for Genesis Associates.

## *MEMORANDUM*

PADOVA, District Judge.

Plaintiff, Brooke Lujan, brings this action against (1) her former psychologist, Patricia A. Mansmann, (2) her former addiction counselor, social worker Patricia A. Neuhausel, and (3) Genesis Associates, the corporation that employs Mansmann and Neuhausel (hereinafter referred to collectively as "Defendants").[1] Defendants file, for the Court's consideration, motions to dismiss certain claims in Lujan's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will grant in part and deny in part Defendants' Motions.

### I. Amended Complaint

Lujan filed her initial Complaint on July 17, 1996 and her Amended Complaint on November 6, 1996. The Amended Complaint alleges the following facts, all of which the Court considers true for the limited purpose of adjudicating Defendants' Motions.

### A. Count I (Negligence)[2]

Sometime in July, 1990, Lujan sought treatment from Defendants for perceived emotional problems, including bulimia. Lujan's parents agreed to pay for Lujan's treat-

---

1. Defendant Mansmann and Defendant Neuhausel filed separate motions to dismiss. Defendant Genesis Associates has joined in Defendant Neuhausel's Motion. (*See* Doc. No. 13). Defendant Neuhausel and Defendant Genesis Associates have joined in Defendant Mansmann's Rebuttal Brief. (*See* Doc. No. 17). Accordingly, the Court refers to Defendant Mansmann, Defendant

Neuhausel, and Defendant Genesis Associates collectively as "Defendants."

2. In the Amended Complaint, Lujan fails to title each specific Count. The title provided in the parenthesis evinces the Court's assessment of the theory presented in each Count.

ment, and Lujan began receiving such care from Defendants. Lujan's parents ultimately paid $8,000 for Lujan's therapy. Nonetheless, Defendants breached their duty to provide Lujan with psychological counseling that was within the standard of care of licensed therapists practicing in the Philadelphia area. This breach occurred when Defendants provided advice and counseling that harmed Lujan; was "cult-like in nature;" encouraged Lujan "to believe in certain memories, including memories of satanic abuse, satanic murders, and deviant sexual assaults;" convinced "Lujan to believe she was being stalked by a cult and that her life was in danger;" induced Lujan to undergo plastic surgery "to alter her features so the 'cult' would have a more difficult time finding her;" informed Lujan that she would have to detach herself from her parents and eliminate all communication with them for approximately two years and retain contact only for financial matters; encouraged her to travel away from Pennsylvania; and otherwise fell below the appropriate standard of care. (Am.Compl.¶¶ 11, 15–19, 30–31). Defendants' actions prevented Lujan from completing her course of study at Lebanon College. Defendants also conducted "rage therapy," and, even though as a consequence of such therapy Lujan fell into a catatonic state, Defendants waited several hours before summoning professional medical attention to assist her.

At a July, 1992 meeting, Defendants provided Lujan with a termination letter advising Lujan that Defendants were discontinuing her therapy for two years, until the danger from the cult subsided. (*See* Am. Compl. ¶¶ 20–25).

On December 15, 1995, Lujan received information concerning the lawsuit her parents filed against Defendants. *See Tuman v. Genesis Assocs.*, 935 F.Supp. 1375 (E.D.Pa. 1996). As a result of this information, Lujan discovered the techniques and unethical practices employed by Defendants and, for the first time, understood that Defendants' mind control techniques had harmed her. The news of the lawsuit caused Lujan to question both her memories and the propriety of the treatment Defendants afforded.

"As a result of the negligence of Defendants described hereinabove, [Lujan] has been caused to suffer emotional and mental pain, discomfort and anguish and will continue to suffer [the] same for an indefinite period into the future as well as physical injuries." (Am.Compl.¶ 32). Furthermore, Lujan "has been unable to properly attend her daily activities, duties and occupations, labors and recreational pursuits and will be unable to do so for an indefinite period of time." (Am.Compl.¶ 33). The direct and proximate result of Defendants' negligence has been a loss of "earning and/or earning power which has been and will be diminished or lessened." (Am.Compl.¶ 34). Finally, "because of the emotional trauma, upset, forced re-location, and mental harm caused by the acts and actions of [D]efendants ... [Lujan] has suffered a loss of life's pleasures .... and claim is made therefore for mental anguish, embarrassment and humiliation." (Am.Compl.¶ 35).[3]

## B. Count II (Breach of Contract)

Defendants "breached their duty under the contract by providing Plaintiff with advice, psychological counseling and/or mental health therapy which was harmful and below the standard of care required." (Am. Compl.¶ 41). Lujan, "because [of Defendants'] breach of contract, was forced to suffer [emotional trauma, upset, forced relocation, mental harm, a loss of life's pleasures, mental anguish, embarrassment, and humiliation]." (Am.Compl.¶ 45).

## C. Count III (Negligence, Willful, Reckless, and Wanton Misconduct)

Defendants, either "individually and/or through their respective agents or employees ... were negligent, careless, willful, reckless and wanton in [one] or more of the following acts or omission," all of which deviated from

---

**3.** The "[w]herefore" clause attached to each Count demands four forms of relief: "(a) compensatory damages on all Counts ... (b) prejudgment and post judgment interest ... (c) attorneys' fees, costs, disbursements, and expert witness fees; (d) and such other relief as this Court deems just and proper." (Am. Compl.¶¶ 35, 45, 53, 65, 75, 86, 97, 109, 117).

the appropriate standard of care. (Am. Compl.¶ 47). Specifically, Defendants failed to exercise due care; employed inadequate and improper treatment methods; failed "to comply with the applicable laws, ordinances, and/or regulations pertaining to the operations of licensed mental health care facilities;" failed to hire experienced and competent personnel; improperly diagnosed and treated Lujan's condition; failed to possess the requisite degree of skill necessary to conduct a proper examination of Lujan; neglected to discuss a treatment plan for Lujan; negligently encouraged Lujan to distance herself from her family; induced false memories; negligently managed group therapy; and failed to provide individual counseling. (Am.Compl.¶ 47).

### D. Count IV (Intentional Infliction of Emotional Distress and Negligence)

"As a direct and proximate result of Defendants' aforesaid extreme and outrageous conduct committed intentionally, wantonly, and with reckless disregard to Plaintiff's mental well being, Plaintiff has suffered extreme and debilitating mental anguish and emotional distress and will continue to do so for an indefinite period of time." (Am. Compl.¶ 55). These actions denied Lujan the "comfort aid companionship and support of her parents." (Am.Compl.¶ 58). Furthermore, the "negligence of Defendants described hereinabove ... [has caused Lujan] to suffer emotional and mental pain, discomfort and anguish." (Am.Compl.¶ 60).

### E. Count V (Negligent Infliction of Emotional Distress)

"As a direct and proximate result of Defendants' aforesaid extreme and outrageously negligent conduct, and with reckless disregard to Plaintiff's mental well being, [Defendants] caused the Plaintiff to suffer extreme and debilitating mental anguish and emotional distress and will continue to do so for an indefinite period of time." (Am.Compl.¶ 67).

### F. Count VI (Breach of Confidentiality)

"Through the course and scope of her treatment, the Defendants routinely and reg-

ularly told others in group therapy statements made by the plaintiff which she had told them in confidence." (Am.Compl.¶ 77). Such conduct was "extreme and outrageously negligent, [made] with reckless disregard to Plaintiff's mental well being, [and] caused the Plaintiff to suffer extreme and debilitating mental anguish and emotional distress." (Am.Compl.¶ 78).

### G. Count VI (Fraudulent Misrepresentation)

Defendants represented to Lujan that they had the capacity to assist Lujan with her bulimia and other emotional problems but did not represent that such therapy would include belief in bizarre memories of satanic rituals, satanic abuse, murders, and sexual assaults. Defendants' fraudulent misrepresentations concerning the nature and results of their therapy induced Lujan to enter into a contractual relationship with them. Such fraudulent misrepresentations and omissions constituted a "substantial factor in the injuries and damages sustained by [Lujan]." (Am.Compl.¶ 91).

### H. Count VII (Racketeer Influenced and Corrupt Organization Act ("RICO")) [4]

Defendants utilized the United States Postal Service in the perpetration of the aforementioned fraudulent acts. "Several letters and bills were mailed to the plaintiff encouraging her beliefs in the above described false memories. Numerous phone calls were made to the plaintiff and the police in an effort to promote their fraudulent misrepresentations." (Am.Compl.¶¶ 100–101). These fraudulent misrepresentations—perpetrated in violation of 18 U.S.C.A. §§ 1341 (West Supp.1997) ("Frauds and swindles") (mail fraud) and 1343 ("Fraud by wire, radio, or television")—were a substantial factor in producing Lujan's injuries.

### I. Count VIII (Punitive Damages)

Defendants' acts or omissions "support a claim for punitive damages as they were

---

**4.** 18 U.S.C.A. §§ 1961–1968 (West 1984 & Supp. 1997) ("RICO").

committed in a willful and/or reckless and/or wanton manner with a conscious indifference to the welfare and mental health of Plaintiff and were of such outrageous nature as to merit the award of punitive damages." [5]

## II. Standard of Review

When a defendant files a motion to dismiss all or a portion of a complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the Court must view all factual allegations in the complaint, and all reasonable inferences that can be drawn therefrom, as true. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Every doubt is to be resolved in favor of the plaintiff, and the complaint can be dismissed only if the plaintiff has alleged no set of facts upon which relief can be granted. *Id.* The Court employs this standard in identifying the pertinent factual context for Defendants' Motions.

## III. Discussion

### A. Statute of Limitations

■ The statute of limitations encourages the "filing of claims promptly by giving no more than a reasonable time within which to make a claim. By limiting the period in which a claim may be made, the statute protects defendants from having to defend actions where the truth-finding process is impaired by the passage of time." *Brunea v. Gustin,* 775 F.Supp. 844, 846 (W.D.Pa.1991) (citations omitted). Pennsylvania law imposes a duty on the complainant to "use all reasonable diligence to properly inform [herself] of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 622 A.2d 1388, 1391 (1993) (citation omitted).[6] The statute of limitations begins to run "as soon as the right to insti-

tute and maintain a suit arises; lack of knowledge, mistake, or misunderstanding do not toll the running of the statute of limitations." *A. McD. v. Rosen,* 423 Pa.Super. 304, 621 A.2d 128, 130 (1993) (citation omitted).

### 1. The Discovery Rule

■ In some cases, regardless of the exercise of reasonable diligence, the complainant neither knows that she has suffered an injury nor is aware of its cause, and a judicially created doctrine, "the discovery rule," becomes applicable. "The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *E.J.M.,* 622 A.2d at 1391 (citations omitted). "The party seeking to invoke the discovery rule is under a heavy burden of inquiry." *Brunea,* 775 F.Supp. at 846.

■ Under the discovery rule, the statute of limitations begins to run "when the injured party possesses sufficient critical facts to put [her] on notice that a wrong has been committed and that [she] need investigate to determine whether [she] is entitled to redress." *McD.,* 621 A.2d at 130 (citation omitted). Specifically, the discovery rule tolls the statute of limitations until "the plaintiff knows or reasonably should know (1) that [she] has been injured, and (2) that [her] injury has been caused by another party's conduct." *Baily,* 763 F.Supp. at 805 (citation omitted).

■ Pennsylvania courts employ an objective, not subjective, standard of reasonableness. *See McD.,* 621 A.2d at 131 (noting "[t]he standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard"). "[T]he statute is tolled only if a

---

5. Count VIII refers to Defendants' actions "as set forth in paragraphs one through seventy-one." (Am.Compl.¶ 109). This encompasses only the wrongdoing charged in Count I through Count V.

6. When a case is based on diversity of citizenship, as is the instant case, "the law of the forum state, Pennsylvania, controls. This includes the forum state's statutes of limitation." *Baily v. Lewis,* 763 F.Supp. 802, 804 (E.D.Pa.) (citation omitted), *aff'd,* 950 F.2d 721 (3d Cir.1991).

reasonable person in the plaintiff's position would have been unaware of the salient facts." *Brunea*, 775 F.Supp. at 846 (citation omitted). The nature of the alleged injury plays a considerable role in deciding whether to apply the discovery rule. "Since the standard of knowledge is objective, the nature of the inquiry will typically determine whether the discovery rule has application. Only where the injury is not readily discernible can the rule apply." *McD.*, 621 A.2d at 131 (citation omitted).

■■■■■ "In applying the discovery rule, whether a plaintiff should have made a timely discovery of his or her injury is generally an issue for the jury unless the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law." *Id.* at 130. *Cf. E.J.M.*, 622 A.2d at 1391 (noting "[w]hether a statute has run on a claim is a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury"). While the point at which the complainant should reasonably be aware that an injury has been suffered remains a jury question, "only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *E.J.M.*, 622 A.2d at 1391 (citations omitted).

### 2. Application of the Discovery Rule

Defendants argue that Lujan failed to file her claims within the two year limitations period articulated by the applicable statute of limitations. *See* 42 Pa.Cons.Stat.Ann. § 5524(7) (West Supp.1996) (establishing two year limitations period for "negligent, intentional, or otherwise tortious conduct ... including fraud"). According to Defendants, the discovery rule does not apply in the instant case because Lujan's Amended Complaint alleges nothing more than insanity, mental incapacity, repressed memory, or factual misunderstanding, none of which toll the statute. Lujan's actions, argue Defendants, fail the reasonable person standard. Finally, Defendants assert that Lujan's breach of confidentiality Count reveals that Lujan was aware of the supposedly wrongful acts prior to December 15, 1995. In support of their contentions, Defendants rely on a string of cases which both rejected plaintiffs' claims that their injuries were discovered long after their occurrence and declined to invoke the discovery rule.[7]

Lujan protests that Defendants misconstrue the allegations presented in the Amended Complaint. According to Lujan, the Amended Complaint does not claim "mental incapacity." Rather, it alleges that the nature of the treatment practiced by Defendants precluded Lujan from learning of either her injuries or Defendants' role in causing those injuries. Furthermore, Lujan does not claim to have repressed her memories within the limitations period. The Amended Complaint, argues Lujan, alleges a lack of opportunity to discover the harm inflicted because Defendants sent her outside

---

**7.** *See Dougherty v. Township of Lower Merion*, No. 96–1589, 1996 WL 273675, at *5 (E.D.Pa. May 15, 1996) (granting motion to dismiss where complaint suggested that plaintiff was aware of the incident but failed to report it); *Messina v. Bonner*, 813 F.Supp. 346, 348 (E.D.Pa.1993) (granting Fed.R.Civ.P. 50(a) motion in the presence of testimony that plaintiffs remembered and knew about sexual abuse during, or prior to, their majority but did not realize that the molestation caused physical and psychological problems); *Brunea*, 775 F.Supp. at 848–49 (granting summary judgment where the injury suffered was "readily discernable" and plaintiff "possessed the salient facts concerning the occurrence of his injury or who or what caused it"); *Baily*, 763 F.Supp. at 805 (granting summary judgment where plaintiff claimed he "was the victim of sexual abuse while a minor and that, until recently, he psychologically repressed the memory of the events"); *Seto v. Willits*, 432 Pa.Super. 346, 638 A.2d 258, 259 (rejecting a proffer that during the course of sexual assault plaintiff's "personality split to the extent that she mentally blocked out the acts committed by [defendant] upon her" because Pennsylvania law does not allow repressed memory, insanity, or mental incapacity to toll statute), *appeal denied*, 538 Pa. 648, 647 A.2d 902 (1994); *E.J.M.*, 622 A.2d at 1389–93 (granting summary judgment where the parishioner knew that priest's abuse was occurring but did not become aware of the psychological and emotional injuries until later); *McD.*, 621 A.2d at 131–32 (granting summary judgment on patient's malpractice claim against her psychiatrist for sexual misconduct because the evidence suggested plaintiff was "in possession of the salient facts regarding her alleged mistreatment and the persons responsible therefor").

**1226**

the state, away from family and other psychiatrists who could assist her.

■ The Court concludes that Lujan has alleged sufficient facts to justify tolling the statute of limitations through the discovery rule. Because the Court is adjudicating a motion to dismiss, it must consider all facts alleged in the Amended Complaint true. According to the Amended Complaint, on December 15, 1995, Lujan was sent information concerning a lawsuit her parents initiated against Defendants. It was only after Lujan received this information, and subsequent reports concerning the litigation, that she became aware that Defendants' treatment was harming her "psychological well being." Specifically,

> Due to the cult-like nature of the therapy, Plaintiff did not have sufficient knowledge to recognize techniques of mind control and unethical practices, and techniques which were harmful to [P]laintiff's psychological well being utilized during therapy until some time after [P]laintiff first began receiving information relating to a lawsuit filed by her parents against Genesis Associates.

> As a result of receiving information about her parents' lawsuit, Plaintiff began to question the veracity of her memories, and the appropriateness of the treatment she received from Defendants.

(Am.Compl.¶¶ 27–28). The Amended Complaint alleges that Lujan neither suspected nor knew of Defendants' purported wrongdoing until December, 1995.

The applicability of the discovery rule depends largely on the nature of the injury alleged. In the case *sub judice*, Lujan contends Defendants inflicted mental distress and psychological harm. The Court believes, that at this stage, finding distinctions between (1) components of Lujan's current emotional condition that may have existed prior to the wrongdoing alleged and (2) emotional and psychological injuries that resulted from Defendants' purported conduct is difficult in the absence of a more fully developed record. This question cannot be addressed in the context of a motion to dismiss. Defendants provide the Court with a series of cases that suggest application of the discovery rule is inappropriate, but those cases are readily distinguishable. Nearly all dealt with the question on a summary judgment motion, facing a more fully developed record than that found in the instant case.

The Court reaches its decision examining *only* the Amended Complaint and cannot find, based upon that inspection, that the undisputed facts lead unerringly to the conclusion that the time it took Lujan to discover any injury was unreasonable as a matter of law. Specifically, the Court is precluded from finding, at this stage of the proceedings, that (1) Lujan either knew, or reasonably should have known, she was injured and (2) that her injury was caused by another party's conduct. According to the Amended Complaint, Lujan did not possess the salient facts concerning the injury—and therefore could not readily discern it—until at least December, 15, 1995. Lujan may very well present evidence that a reasonable person would not have been aware of the salient facts necessary to discern either wrongdoing or injury prior to that date, and the Court is wary of removing that factual issue from jury consideration. Accordingly, the statute of limitations may have begun to run on December 15, 1995, making this action timely.

The dynamics of the psychiatrist-patient relationship contribute to this finding. Patients do not immediately assume their treating psychiatrists are perpetrating tortious acts through harmful and psychologically damaging treatment. Instead, patients are reluctant to either impute ulterior motives to the advice of their psychiatrist or automatically question the propriety of the psychiatrist's treatment. The appropriate standard of care expected of a psychiatrist is usually established by expert testimony. Lujan may have had no idea, as a lay-person, what "proper" and "improper" treatment was. Lujan, quite typically, may have assumed her psychiatrist was providing proper treatment and may not have become suspicious until December, 1995. Lujan's breach of confidentiality claim does not invalidate this finding. Just because Lujan may have known that confidences were being revealed during group therapy does not mean she knew the breach was unlawful. She might have

thought that Defendants divulged those confidences for reasons related to therapy.

### B. Breach of Contract Claim

Defendants maintain that Lujan's breach of contract claim is governed by a two year statute of limitations period instead of the four year period prescribed in 42 Pa.Cons. Stat.Ann. § 5525(3) (West 1981 & Supp.1996) (establishing a four year limitations period for "an action upon an express contract not founded upon an instrument in writing"). According to Defendants, because Lujan's breach of contract claim actually sounds in tort and resembles a tort claim for personal injury damages, a two year statute of limitations applies. *See e.g., Tuman v. Genesis Assocs.*, 935 F.Supp. 1375, 1390 (E.D.Pa. 1996) (noting "to prevent malpractice plaintiffs from sidestepping the two-year limitation in tort suits, Pennsylvania law requires a plaintiff to make out a distinct contract claim, separate and apart from a tort claim based on the defendants' alleged violation of a professional duty of care") (citing *Sherman Indus., Inc. v. Goldhammer*, 683 F.Supp. 502 (E.D.Pa.1988)); *Murray v. University of Pennsylvania Hosp.*, 340 Pa.Super. 401, 490 A.2d 839, 841–42 (1985) (noting "the two year statute applicable to causes of action for personal injuries cannot be avoided by the expedient of pleading in contract.... In determining which statute will control, it is necessary to determine the nature of the damages sought to be recovered") (citations omitted).

The Court need not resolve this issue in light of its prior decision regarding the discovery rule. Whether a two or four year statute of limitations applies is of no moment because the Court has concluded, for purposes of resolving Defendants' Motion to Dismiss only, that the statute may have begun to run on December 15, 1995. Under either a two or four year limitations period, and regardless of whether it sounds in tort or in contract, Lujan's breach of contract claim survives.

### C. Intentional and Negligent Infliction Claims

Defendants contend that Lujan's claims for intentional and negligent infliction of emo-

tional distress fail because Lujan does not allege she sustained a physical impact, injury, or manifestation of the emotional distress. Defendants also protest that Lujan must claim the conduct caused her to seek medical treatment for the supposed emotional distress in order to state a claim. *See Armstrong v. Paoli Mem'l Hosp.*, 430 Pa.Super. 36, 633 A.2d 605, 609 (1993) (noting "[p]hysical injury must be averred to state a cause of action for negligent infliction of emotional distress"), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994); *Britt v. Chestnut Hill College*, 429 Pa.Super. 263, 632 A.2d 557, 561 (1993) (stating, with regard to intentional infliction claim, "[i]n addition to requiring that a plaintiff establish that the conduct complained of was outrageous, the Pennsylvania Supreme Court has required that the plaintiff present competent medical evidence to support the claim").

■ The Court finds Lujan's Amended Complaint states causes of action for both intentional and negligent infliction of emotional distress. It is true that "[t]o state a claim for either negligent or intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege some physical injury, harm, or illness caused by defendant's conduct." *Corbett v. Morgenstern*, 934 F.Supp. 680, 684 (E.D.Pa. 1996) (citation omitted). In her intentional infliction claim, Lujan does: "extreme and debilitating mental anguish and emotional distress;" "emotional and mental pain, discomfort and anguish;" denial of "comfort aid companionship and support of her parents;" "ongoing interruption of her life;" and "physical injuries." (Am.Compl.¶¶ 55–60). The Court requires only that Lujan furnish "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Having fulfilled this pleading requirement, Lujan's intentional infliction claim survives.

■ It is true that "in order to make out a claim for intentional infliction of emotional distress in Pennsylvania, Plaintiffs must offer expert medical confirmation that they actually suffered the claimed distress." *Tuman*, 935 F.Supp. at 1392–93 (granting summary

judgment where "[p]laintiffs' counsel acknowledged at oral argument that there was no expert medical confirmation in the record that Plaintiffs suffered these alleged physical injuries"). In the event that later in the proceedings, Lujan fails to present any medical evidence confirming the alleged injury, Defendants may have an opportunity to address that inadequacy at summary judgment or on a motion filed pursuant to Federal Rule of Civil Procedure 50(a). For now, however, Lujan has successfully pled physical injury.

 The Court reaches the same result with regard to Lujan's negligent infliction claim. With respect to negligent infliction, the applicable Pennsylvania law requires allegations of physical injury. The Amended Complaint provides Lujan suffered the following injury: "extreme and debilitating mental anguish and emotional distress;" "[denial of] the comfort, aid, companionship and support of her parents;" "ongoing interruption of life;" and "physical injuries." (Am.Compl.¶¶ 67–72). The Amended Complaint alleges physical injuries and therefore complies with Federal Rule of Civil Procedure 8(a)(2). Furthermore, Pennsylvania courts have found that "symptoms of severe depression, nightmares, stress and anxiety requiring psychological treatment and ongoing mental, physical, and emotional harm sufficiently state physical harm or injury to sustain causes of action for infliction of emotional distress." Corbett, 934 F.Supp. at 684–85 (citation omitted). Lujan's Amended Complaint alleges such severe injury and therefore satisfies the pleading requirements with respect to negligent infliction of emotional distress. See also Armstrong, 633 A.2d at 609 (noting that "long continued nausea or headaches, repeated hysterical attacks or mental aberration are compensable injuries" and finding allegations of "loss of continence ... coupled with [a] claim of depression, nightmares and insomnia meet the requirement of allegation of physical injury").

### D. Fraudulent Misrepresentation Claim

Defendants protest that Lujan has not pled her fraudulent representation claim with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). Specifically, Defendants assert the absence of contentions that they (1) knew their representations were false, (2) intended to induce Lujan to act against her will, and (3) failed to help her with her bulimia. The Amended Complaint also neglects to claim, argue Defendants, that Lujan justifiably relied on Defendants' misrepresentations. According to Defendants, the remainder of Lujan's fraudulent misrepresentation claim rests on allegations that Defendants *omitted* facts concerning what therapy entailed, and omissions cannot serve as a basis for fraudulent representation claim.

 In averring fraud, the relevant Federal Rule of Civil Procedure demands that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). This requires a plaintiff to plead "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir.) (citation omitted), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). *See Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983) (noting that Rule 9(b) applies to fraud actions based on state law).

 Fed.R.Civ.P. 9(b) imposes stringent pleading requirements with regard to fraud. The Complaint must state "the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the 'precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud.'" *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1989) (citation omitted). Conclusory allegations alone do not satisfy the particularity requirements of Rule 9(b). *Id.* (requiring that complaint's allegations be "accompanied by a statement of the facts upon which the allegations are based") (citation omitted). *See also Madonna v.*

*United States,* 878 F.2d 62, 66 (2d Cir.1989) (noting that "conclusory averments of the existence of fraud made upon information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud") (citation omitted).

■ In the case *sub judice,* the fraudulent misrepresentation claim survives. The Amended Complaint names the perpetrators of the fraudulent statement and/or omission. It also lists the content of those statements, i.e., that Defendants represented that they would assist Lujan with emotional disorders but omitted the fact that this therapy involved separation from her parents as well as the implantation of memories of satanic rituals, abuse, and deviant sexual assaults. (*See* Am.Compl. ¶¶ 88–91 (alleging "Defendants fraudulently misrepresented the nature and results of their 'therapy' and used deceit and false statement to induce Plaintiff to enter into a contract with them" and these representations were a "substantial factor" in bringing about Lujan's injuries)).

Count VI theorizes that Defendants fraudulently told Lujan they would help her with her emotional disorders but failed to tell her that the therapy involved the implantation of memories of bizarre satanic rituals and sexual assaults. According to Lujan, these representations and omissions induced her to begin therapy. Lujan has stated a claim for fraudulent misrepresentation. Because the relationship involved matters known to Defendants that Lujan was entitled to know because of a fiduciary relation of trust and confidence between her and Defendants, allegations of "omissions" will support Lujan's claim for fraudulent misrepresentation. *See Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604 (3d Cir.1995) (finding "liability may be imposed on a party to a business transaction only when it has a duty to speak. That duty ... exists only in limited circumstances, including (1) when there is a fiduciary or confidential relationship between

the parties") (citing Restatement (Second) of Torts § 551 (1977)).[8]

### E. Breach of Confidentiality

Defendants argue that in Count VI, Lujan confusingly omitted a title. Defendants read that count as presenting either a claim for invasion of privacy or breach of confidentiality. Lujan resolves this ambiguity in her Response, which simply states "plaintiff seeks through Count VI to recover damages for breach of confidentiality." (Pl.'s Resp. at (E.)). Defendants protest that the breach of confidentiality claim fails because the Amended Complaint fails to state that Lujan did *not* consent to participate in group therapy. They also argue that the Amended Complaint reveals neither the specific therapy sessions at issue nor the confidences revealed.

■ The Amended Complaint baldly asserts "[t]hroughout the course and scope of her treatment, the Defendants[ ] routinely and regularly told others in group therapy statements made by plaintiff which she had told them in confidence." (Am.Compl.¶ 77). Pennsylvania case law recognizes a cause of action for "breach of confidentiality." *See Ms. B. v. Montgomery County Emergency Serv., Inc.,* 799 F.Supp. 534, 538 (E.D.Pa. 1992) (recognizing the harm caused by breach of patient-physician confidentiality as including "direct negative consequences for the patient;" "harm simply from knowing that elements of the intimate details of [her] life have been laid bare for the uninvited viewer;" and "harm to [her] public image ... that cannot be rehabilitated through legal action"), *aff'd,* 989 F.2d 488 (1993); *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950, 953 (1988) (recognizing claim for breach of confidentiality), *appeal denied,* 521 Pa. 630, 631, 558 A.2d 532 (1989).

■ Admittedly, the skeletal allegations in the Amended Complaint omit details indicating the content of the statements, their subject matter, the topic of the confidences

---

**8.** An accompanying comment to Restatement § 551 states that, "relations of trust and confidence include ... those of physician and patient, attorney and client...." Restatement (Second) Torts § 551, cmt. f (1977). *See Duquesne,* 66 F.3d at 611–12 (examining the extent of Pennsylvania courts' adoption of § 551).

revealed, their timing, to whom the statements were made, etc. Dismissing the breach of confidentiality claim for these inadequacies, however, would constitute an implicit application of Federal Rule of Civil Procedure 9(b). The Court would in effect apply a heightened pleading standard by erroneously requiring particularity in a cause of action that need only satisfy Federal Rule of Civil Procedure 8(a)(2). Lujan has pled that a psychiatrist-patient relationship existed with Defendants, that confidences were entrusted to Defendants, and that Defendants breached this confidentiality by revealing Lujan's confidences in group therapy. Lujan has provided the Court with a short and plain statement declaring her entitlement to relief on the breach of confidentiality claim, and Defendants are aware of the basic conduct for which they must answer.[9]

### F. RICO Count

Defendants maintain Lujan has failed to properly plead a RICO claim, asserting fraud has not been alleged with sufficient particularity and a "pattern" of racketeering has not been established. Defendants protest the Amended Complaint's skeletal reference to their (1) use of the United States Postal Service to send letters and bills and (2) placing numerous telephone calls to Lujan and the police. The Amended Complaint, argue Defendants, fails to set forth sufficient facts to establish a pattern of racketeering activity. The Court agrees.

■■■ In order to survive Defendants' Motion to Dismiss, Lujan's RICO claim must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Heintz Corp. v. Electro Methods, Inc.*, No. 94–6916, 1995 WL 405721, at *2 (E.D.Pa. June 20, 1995) (citation omitted).

■■■ RICO "defines a 'pattern' of racketeering activity as requiring 'at least two acts of racketeering activity' within a ten year period." *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3d Cir.1995) (quoting 18 U.S.C.A. § 1961(5)), *cert. denied*, —— U.S. ——, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995).[10] A complaint alleges such a pattern if " 'the racketeering predicates are related, *and* . . . they amount to or pose a threat of continued criminal activity.' " *Id.* at 1292 (citation omitted). Under the "relatedness requirement," "predicate acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* (citation omitted).

■■■ To comply with the "continuity" prong of the analysis, the complaint must allege "continuity of racketeering activity, or its threat.' " *Id.* (citation omitted). Continuity may be either closed-ended, referring "to a closed period of repeated conduct," or open-ended, meaning "past conduct that by its nature projects into the future with a threat of repetition." *Id.* (citation omitted). With regard to closed-ended conduct, the related predicates must extend over a substantial period of time, generally exceeding one year. *Tabas*, 47 F.3d at 1293.[11]

9. Defendants also protest that Lujan has no standing to claim damages for loss of parental consortium. According to Defendants, loss of parental consortium is not a recognized cause of action in Pennsylvania. *See Wapner v. Somers*, 428 Pa.Super. 187, 630 A.2d 885, 886 (1993) (noting "no cause of action for the loss of parental consortium [will] be recognized in Pennsylvania") (citation omitted), *appeal denied*, 538 Pa. 636, 647 A.2d 511 (1994). Lujan, however, does not delineate such a cause of action in her Amended Complaint. She merely lists the loss of companionship with her parents as an example of the harm suffered and a component of the damages sustained. (*See* Am.Compl. ¶¶ 58, 81, 93, 105, 112).

10. The Court notes that *Tabas* was the product of a divided United States Court of Appeals for the Third Circuit. This section of Judge Roth's opinion was not joined by a majority of the court. Instead, Judge Becker—joined by Judge Stapleton and Judge McKee—and Judge Alito filed concurring opinions. Judge Greenberg, joined by five other judges, dissented. However, to the extent the discussion is drawn directly from Supreme Court precedent, the concurring judges did not disagree with the analysis.

11. The period which must be alleged is unclear. Judge Roth's opinion refers to a period in excess of one year, *id.*, while Judge Becker's concurring opinion refers to a period in excess of three or four months, *id.* at 1300 (Becker, J., concurring). Judge Alito does not specify the period necessary to establish continuity. *Id.* at 1302 (Alito, J., concurring).

"[O]pen-ended continuity is established when the commission of the predicate acts is a 'regular way of conducting defendant's ongoing legitimate business.'" *Id.* at 1295.

*Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36 (3d Cir.1987), however, recognized that:

> the existence of a RICO pattern does not turn on the abstract characterization of racketeering acts as 'continuous' and 'related' but rather on a combination of specific factors such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.

*Id.* at 39.[12]

▇▇▇▇ The Amended Complaint lacks information needed to enable Defendants to formulate a defense to Lujan's RICO claim. The RICO claim merely states that several letters and bills were mailed to Lujan encouraging her beliefs, and numerous phone calls were made to Lujan and the police in an effort to promote fraudulent misrepresentations, all in violation of 18 U.S.C.A. §§ 1341, 1343, and 1961. The Amended Complaint neglects to identify either the "enterprise" or the "persons" engaged in the unlawful conduct. *See Heintz,* 1995 WL 405721, at *2 (noting "[p]laintiff identifies EMI as the 'enterprise' and the [i]ndividual [d]efendants as the 'persons'"). A properly pleaded RICO count includes enterprise descriptions that contain *inter alia* (1) the names of the individuals, partnerships, associations, or other legal entities that constitute the enterprise; (2) the structure, purpose, function and course of conduct of the enterprise; (3) information on whether any defendants are employees, officers or directors of the alleged enterprise; (4) a statement as to whether defendants are associated with the enter-

prise; and (5) a statement as to whether defendants are individuals or entities separate from the alleged enterprise, are the enterprise itself, or are members of the enterprise.

The Amended Complaint also fails to (1) indicate the specific provision(s) of 18 U.S.C.A. § 1961 that has (have) been violated, i.e., §§ 1961(a), (b), (c), and/or (d); (2) provide a list of responsible defendants that reveals the alleged misconduct perpetrated by each defendant and the basis of each Defendant's liability; and (3) describe in detail the pattern of racketeering activity that includes *inter alia* information relating to the predicate acts and the specific provisions violated. While Lujan did reveal the specific acts violated, 18 U.S.C.A. §§ 1361, 1363, she did not describe how the predicate acts form a pattern of racketeering activity, how they relate to each other as part of a common plan, and have they pose a threat of continued criminal activity.

Lujan requests an opportunity to file a second Amended Complaint in the event that the Court finds the RICO Count inadequate. Serious questions arise as to Lujan's ability to state a valid RICO claim based on a case that now appears as a state-law dispute over the propriety and integrity of the counseling and therapy allegedly administered by Defendants. This dispute may very well amount to nothing more than a civil controversy with nothing really to be gained by introducing into the case the difficult application of federal RICO pertaining to (1) a "pattern of racketeering activity" and (2) the question of whether Defendant or Defendants individually engaged in any criminal, predicate acts.

If Lujan chooses to file a second amended complaint pleading RICO, she should exercise special care in pleading the necessary elements as to each Defendant named. In

---

12. In the wake of *Tabas,* the viability of *Barticheck* is uncertain. *See Tabas,* 47 F.3d at 1296 (noting "the fact that we do not employ the *Barticheck* factors in our analysis here does not, however, mean that they might not be relevant in a different case in determining if continuity exists"); *id* at 1298–99 (Becker J., concurring) (considering the third, fourth, and fifth *Barticheck* factors irrelevant to the continuity inquiry);

*id.* at 1302 (Alito, J., concurring) (remarking "the *Barticheck* factors should be considered except to the extent that they have some logical bearing on 'relatedness' or 'continuity'"); *id.* at 1304–05 (Greenberg, J., dissenting) (finding the *Barticheck* factors provide "guidelines in determining whether the plaintiff has demonstrated continuity and relatedness").

that regard, Lujan should be guided by the Court's "RICO Case Statement" form in determining and stating such requested amendments. Accordingly, the Court will dismiss Lujan's RICO Count without prejudice and allow her leave to amend, a second time, the Amended Complaint.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 13th day of March, 1997, upon consideration of Defendants' Motions to Dismiss (Doc. Nos.11, 12, 13, 17), Plaintiff's Responses thereto (Doc. Nos.14, 15, 18), and Defendants' Rebuttal (Doc. No. 16), **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motions are **GRANTED** with respect to Count VII, and Count VII is **DISMISSED WITHOUT PREJUDICE.**

2. Defendants' Motions are **DENIED** in all other respects.

3. Plaintiff shall have ten (10) days after notice of this Order within which to file an Amended Complaint, and Defendants shall have ten (10) days after service of that Amended Complaint within which to file a responsive pleading.